**No. 23-2964**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

JOSE AGEO LUNA VANEGAS,
on behalf of himself and all others similarly situated,

Plaintiff-Appellee,

v.

SIGNET BUILDERS, INC.,

Defendant-Appellant.

---

On Appeal from the United States District Court
for the Western District of Wisconsin

---

## BRIEF FOR PLAINTIFF-APPELLEE

---

Jennifer J. Zimmermann
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200
Madison, WI 53703
(608)256-3304
jjz@legalaction.org

Lorraine Gaynor
IOWA LEGAL AID
1700 S. 1st Avenue, Suite 10
Iowa City, IA, 52240
(319)351-6570, Ext.1512
lgaynor@iowalaw.org

Kelsi Brown Corkran
Joseph W. Mead
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
Georgetown Univ. Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
(202) 662-9765
jm3468@georgetown.edu

Edward J. Tuddenham
42 Ave. Bosque, Paris, France,
+33 6 84 79 89 30
edwardtuddenham@gmail.com

*Attorneys for Plaintiff-Appellee*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __23-2964__

Short Caption: __Luna Vanegas v. Signet Builders__

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   ☑   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
  Plaintiff Jose Ageo Luna Vanegas; Plaintiff Jose Luis Garcia Gonzalez

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
  Institute for Constitutional Advocacy and Protection at Georgetown University Law Center; Legal Action of Wisconsin;

  Iowa Legal Aid; Edward J. Tuddenham

(3)   If the party, amicus or intervenor is a corporation:

   i)   Identify all its parent corporations, if any; and

     N/A

   ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     N/A

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: __/s/ Kelsi Corkran__    Date: __12/18/23__

Attorney's Printed Name: __Kelsi Corkran__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: __Institute for Constitutional Advocacy and Protection, Georgetown University Law Center__

  600 New Jersey Ave., N.W. Washington, D.C. 20001

Phone Number: __(202) 661-6728__    Fax Number: __(202) 661-6730__

E-Mail Address: __kbc74@georgetown.edu__

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2964

Short Caption: Luna Vanegas v. Signet Builders, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Plaintiff Jose Ageo Luna Vanegas, Plaintiff Jose Luis Garcia Gonzalez

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Legal Action of Wisconsin, Inc; Iowa Legal Aid; and, Law Office of Edward Tuddenham

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: s/Lorraine Gaynor                    Date: October 31, 2023

Attorney's Printed Name: Lorraine Gaynor

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Iowa Legal Aid, 1700 S. 1st Avenue, Suite 10, Iowa City, IA 52240

Phone Number: 319-359-3119                    Fax Number: 319-351-0079

E-Mail Address: lgaynor@iowalaw.org

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2964

Short Caption: Luna Vanegas v. Signet Builders

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Plaintiff Jose Ageo Luna Vanegas; Plaintiff Jose Luis Garcia Gonzalez

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Institute for Constitutional Advocacy and Protection at Georgetown University Law Center; Legal Action of Wisconsin;

Iowa Legal Aid; Edward J. Tuddenham

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

N/A

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/Joseph W. Mead     Date: 12/14/2023

Attorney's Printed Name: Joseph W. Mead

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☑    **No** ☐

Address: Institute for Constitutional Advocacy and Protection, Georgetown University Law Center

600 New Jersey Ave., N.W. Washington, D.C. 20001

Phone Number: (202) 662-9765     Fax Number: (202) 661-6730

E-Mail Address: jm3468@georgetown.edu

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2964

Short Caption: Luna Vanegas v. Signet Builders, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Plaintiff Jose Luna Vanegas, Plaintiff Jose Luis Garcia Gonzalez.

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Legal Action of Wisconsin, Iowa Legal Aid, Edward Tuddenham

(3)   If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: _____ Date: October 31, 2023

Attorney's Printed Name: Edward Tuddenham

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑   No ☐

Address: 42 Avenue Bosquet, 75007 Paris, France

Phone Number: +33 6 84 79 89 30       Fax Number: _____

E-Mail Address: edwardtuddenham@gmail.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2964

Short Caption: Luna Vanegas v. Signet Builders, Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   Plaintiff Jose Ageo Luna Vanegas, Plaintiff Jose Luis Garcia Gonzalez

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Legal Action of Wisconsin, Inc;   Iowa Legal Aid; and,  Law Office of Edward Tuddenham

(3)     If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/Jennifer J. Zimmermann     Date: October 31, 2023

Attorney's Printed Name:  Jennifer J. Zimmermann

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐     **No** ☑

Address:  Legal Action of Wisconsin, 744 Williamson Street, Suite 200, Madison, WI 53703

Phone Number:  608-620-2009     Fax Number:  608-256-0510

E-Mail Address:  jjz@legalaction.org

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

RULE 26.1 DISCLOSURE STATEMENTS................................................................ii

TABLE OF CONTENTS........................................................................vii

TABLE OF AUTHORITIES ........................................................................ix

INTRODUCTION ........................................................................1

STATEMENT OF JURISDICTION ........................................................3

STATEMENT OF THE ISSUE ........................................................3

STATEMENT OF THE CASE........................................................3

A.    Legal Framework ........................................................3

B.    Procedural History ........................................................5

SUMMARY OF ARGUMENT ........................................................8

STANDARD OF REVIEW ........................................................11

ARGUMENT ........................................................11

I.    The Court Should Dismiss the Appeal as Improvidently Accepted................11

II.   The District Court Correctly Rejected Signet's Claim that Rule 4(k) Limits Personal Jurisdiction After the Summons is Properly Served............12

    A.    Rule 4(k)(1)(A)'s plain text looks to state law only when serving a summons or filing a waiver of service....................................15

    B.    This Court rejected Signet's theory of Rule 4 in *Mussat v. IQVIA* ........16

    C.    The structure and language of other Rules support reading Rule 4(k)(1)(A) in accordance with its plain meaning. ...................................19

    D.    Signet's references to drafting history do not advance its argument........................................................21

E.    Signet's policy arguments for departing from the Rule's plain language are unpersuasive ................................................................ 23

III.    Signet's Invocation of Wisconsin's Long-Arm Statute is Forfeited, Irrelevant, and Wrong ........................................................................ 29

IV.    *Bristol-Myers* is Inapplicable to Collective Actions Brought Under Federal Law in Federal Court ........................................................ 31

A.    Signet's argument that *Bristol-Myers'* limitation on state courts applies post-summons relies on its misinterpretation of Rule 4(k) ....... 32

B.    *Mussat* also forecloses Signet's *Bristol-Myers* argument ...................... 34

V.    In the Alternative, the District Court has Supplemental Personal Jurisdiction over Signet for the Opt-In Claims ................................ 44

CONCLUSION ................................................................................................ 47

CERTIFICATE OF COMPLIANCE .......................................................... 48

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Abelesz v. OTP Bank,*
   692 F.3d 638 (7th Cir. 2012) ................................................................ 13

*Action Embroidery Corp. v. Atl. Embroidery, Inc.,*
   368 F.3d 1174 (9th Cir. 2004) ............................................................. 46

*Adam v. Saenger,*
   303 U.S. 59 (1938) ............................................................................ 25

*All Am. Airways v. Elderd,*
   209 F.2d 247 (2d Cir. 1954) ............................................................... 40

*Bigger v. Facebook, Inc.,*
   947 F.3d 1043 (7th Cir. 2020) ...................................................... 11, 28

*Binissia v. ABM Indus., Inc.,*
   No. 13-cv-1230, 2017 WL 4180289 (N.D. Ill. Sept. 21, 2017) ................ 35

*Bittner v. United States,*
   598 U.S. 85 (2023) ............................................................................ 21

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,*
   582 U.S. 255 (2017) ....................................................... 10, 31, 32, 33, 46

*Burnham v. Superior Ct. of Cal., County of Marin,*
   495 U.S. 604 (1990) .......................................................................... 25

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,*
   498 U.S. 533 (1991) .......................................................................... 27

*Canaday v. Anthem Companies, Inc.,*
   9 F.4th 392 (6th Cir. 2021) ........................................... 3, 19, 24, 41, 46

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966) .......................................................................... 45

*DeRango v. United States,*
   864 F.2d 520 (7th Cir. 1988) ............................................................. 27

*Devlin v. Scardelletti,*
   536 U.S. 1 (2002) ............................................................................. 37

*El v. AmeriCredit Fin. Servs., Inc.,*
   710 F.3d 748 (7th Cir. 2013) ............................................................. 23

*Ervin v. OS Rest. Servs., Inc.,*
   632 F.3d 971 (7th Cir. 2011) ....................................................... 5, 35, 44

*Espenscheid v. DirectSat USA, LLC,*
   688 F.3d 872 (7th Cir. 2012) ............................................... 5, 35, 38, 39, 41

*Espenscheid v. DirectSat USA, LLC,*
   705 F.3d 770 (7th Cir. 2013) ............................................. 5, 34, 35, 39, 41

*Ex parte Schollenberger,*
   96 U.S. 369 (1877) ............................................................................ 26

*Felland v. Clifton,*
   682 F.3d 665 (7th Cir. 2012) ........................................................... 30

*Fischer v. Fed. Express Corp.,*
   42 F.4th 366 (3d Cir. 2022) .............................................. 2, 19, 20, 21, 41

*Genesis Healthcare Corp. v. Symczyk,*
   569 U.S. 66 (2013) ............................................................................ 42

*Gonzalez-Servin v. Ford Motor Co.,*
   662 F.3d 931 (7th Cir. 2011) ........................................................... 41

*Hanna v. Plumer,*
   380 U.S. 460 (1965) .......................................................................... 31

*Hansberry v. Lee,*
   311 U.S. 32 (1940) ............................................................................ 34

*Hargrave v. Oki Nursery, Inc.,*
   646 F.2d 716 (2d Cir. 1980) ............................................................ 17

*Harkins v. Riverboat Servs., Inc.,*
   385 F.3d 1099 (7th Cir. 2004) ............................................. 4, 35, 37, 38

*Herrington v. Waterstone Mortg. Corp.,*
   907 F.3d 502 (7th Cir. 2018) ........................................................... 41

*Hoffmann-La Roche Inc. v. Sperling,*
   493 U.S. 165 (1989) .............................................................. 4, 5, 28, 43

*Hollins v. Regency Corp.,*
   867 F.3d 830 (7th Cir. 2017) .............................................. 38, 42, 43

*Hurn v. Oursler,*
   289 U.S. 238 (1933) .......................................................................... 45

*In re Delta Dental Antitrust Litig.,*
   509 F. Supp. 3d 1377 (J.P.M.L. 2020) ........................................... 43

*In re Jimmy John's Overtime Litig.,*
   877 F.3d 756 (7th Cir. 2017) ........................................................... 43

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
   456 U.S. 694 (1982) .......................................................................... 24

*Jones v. Bock,*
   549 U.S. 199 (2007) .......................................................................... 27

*Kainz v. Anheuser-Busch, Inc.*,
    194 F.2d 737 (7th Cir. 1952) ................................................. 39

*Kelly v. Bluegreen Corp.*,
    256 F.R.D. 626 (W.D. Wis. 2009) ....................................... 37

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .............................................................. 45

*Luna Vanegas v. Signet Builders, Inc.*,
    46 F.4th 636 (7th Cir. 2022) .......................................... 5, 6, 7

*Mallory v. Norfolk S. Ry. Co.*,
    600 U.S. 122 (2023) ........................................................ 25, 26

*Marcure v. Lynn*,
    992 F.3d 625 (7th Cir. 2021) ............................................... 27

*Miss. Pub. Corp. v. Murphree*,
    326 U.S. 438 (1946) .............................................................. 25

*Montano v. City of Chicago*,
    375 F.3d 593 (7th Cir. 2004) ............................................... 45

*Morgan v. Fam. Dollar Stores, Inc.*,
    551 F.3d 1233 (11th Cir. 2008) ........................................... 43

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) .................... 2, 10, 16, 19, 34, 36, 42, 43, 44

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) .................................................. 5

*Oklahoma v. Castro-Huerta*,
    142 S. Ct. 2486 (2022) ......................................................... 21

*Packer v. Trs. of Ind. Univ. Sch. of Med.*,
    800 F.3d 843 (7th Cir. 2015) ............................................... 29

*Pavelic & LeFlore v. Marvel Ent. Grp.*,
    493 U.S. 120 (1989) ..................................................... 15, 20, 27

*Peacock v. Thomas*,
    516 U.S. 349 (1996) .............................................................. 45

*Pension Benefit Guar. Corp. v. LTV Corp.*,
    496 U.S. 633 (1990) .............................................................. 22

*Philos Techs., Inc. v. Philos & D, Inc.*,
    802 F.3d 905 (7th Cir. 2015) ............................................... 11

*Powell v. U.S. Cartridge Co.*,
    339 U.S. 497 (1950) ................................................................ 3

*Punke v. Brody*,
   17 Wis. 2d 9, 115 N.W.2d 601 (1962) ....................................................... 26

*Pyle-Nat'l Co. v. Amos*,
   172 F.2d 425 (7th Cir. 1949) ................................................................... 12

*Rasmussen v. Gen. Motors Corp.*,
   2011 WI 52, 335 Wis. 2d 1, 803 N.W.2d 623 ......................................... 30

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ................................................................... 35

*Rice v. Nova Biomedical Corp.*,
   38 F.3d 909 (7th Cir. 1994) ..................................................................... 45

*Robinson Eng'g Co. Pension Plan & Tr. v. George*,
   223 F.3d 445 (7th Cir. 2000) .................................................. 2, 11, 45, 46

*Schiavone v. Fortune*,
   477 U.S. 21 (1986) ................................................................................... 27

*Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*,
   2017 WI 71, 376 Wis. 2d 528, 898 N.W.2d 70 ..................................... 26

*Siddique v. Laliberte*,
   972 F.3d 898 (7th Cir. 2020) ................................................................... 29

*Smith v. Fam. Video Movie Club, Inc.*,
   No. 11 C 1773, 2015 WL 1542649 (N.D. Ill. Mar. 31, 2015) ................. 37

*Smith v. Pro. Transp., Inc.*,
   5 F.4th 700 (7th Cir. 2021) ................................................................. 4, 34

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
   86 F.3d 656 (7th Cir. 1996) .................................................................. 9, 12

*State ex rel. Ledin v. Davison*,
   216 Wis. 216, 256 N.W. 718 (1934) ....................................................... 26

*Sullivan v. Finkelstein*,
   496 U.S. 617 (1990) ................................................................................. 22

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ...................................................... 17, 18, 23

*Taylor v. Brown*,
   787 F.3d 851 (7th Cir. 2015) ................................................................... 21

*Tony & Susan Alamo Found. v. Sec'y of Lab.*,
   471 U.S. 290 (1985) ................................................................................... 3

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ................................................................................. 45

*United Rope Distributors, Inc. v. Seatriumph Marine Corp.,*
930 F.2d 532 (7th Cir. 1991) .................................................. 9, 13, 33

*United States v. Botefuhr,*
309 F.3d 1263 (10th Cir. 2002) ...................................................... 46

*United States v. Melvin,*
948 F.3d 848 (7th Cir. 2020) .......................................................... 20

*United States v. Universal C. I. T. Credit Corp.,*
344 U.S. 218 (1952) ........................................................................ 39

*Vallone v. CJS Sols. Grp., LLC,*
9 F.4th 861 (8th Cir. 2021) .............................................................. 3

*Walker v. Armco Steel Corp.,*
446 U.S. 740 (1980) .................................................................. 15, 27

*Waters v. Day & Zimmermann NPS, Inc.,*
23 F.4th, 93 (1st Cir. 2022) .......................... 2, 15, 16, 17, 20, 22, 33, 42

*Weeks v. Bareco Oil Co.,*
125 F.2d 84 (7th Cir. 1941) ............................................................ 40

*Williams v. Leach,*
938 F.2d 769 (7th Cir. 1991) .......................................................... 25

*Wilson v. City of Chicago,*
120 F.3d 681 (7th Cir. 1997) .......................................................... 25

*Woods v. N.Y. Life Ins. Co.,*
686 F.2d 578 (7th Cir. 1982) .......................................................... 34

*Zachman v. Erwin,*
186 F. Supp. 681 (S.D. Tex. 1959) ................................................ 40

## Statutes

8 U.S.C. §1101(a)(15)(H)(ii)(A) ......................................................... 6
8 U.S.C. § 1188 ................................................................................. 6
28 U.S.C. § 1367(a) .......................................................................... 44
28 U.S.C. § 1391(b)(2) ..................................................................... 24
28 U.S.C. § 1404(a) .......................................................................... 24
28 U.S.C. § 1406(a). ......................................................................... 24
28 U.S.C. § 1407 .............................................................................. 43
29 U.S.C. § 206. ................................................................................. 3
29 U.S.C. § 206(d) ........................................................................... 43
29 U.S.C. § 207 .............................................................................. 3, 6
29 U.S.C. § 216(b) ......................................... 1, 4, 7, 28, 31, 34, 38
29 U.S.C. § 626(b) ........................................................................... 43
Wis. Stat. § 180.1507 ...................................................................... 26

Wis. Stat. § 180.1510(1)................................................................. 26
Wis. Stat. § 801.05........................................................................ 29
Wis. Stat. § 801.05(13).................................................................. 30

## Rules

Fed. R. Civ. P. 4(a), (c), (d), (e)-(j), (*l*), (m) ................................ 16
Fed. R. Civ. P. 4(k)(1) ............................................................ *passim*
Fed. R. Civ. P. 4(k)(1)(B)............................................................. 20
Fed. R. Civ. P. 4(k)(1)(C)....................................................... 17, 23
Fed. R. Civ. P. 5(a)(1) ........................................................... 19, 21
Fed. R. Civ. P. 5(a)(2)................................................................ 19
Fed. R. Civ. P. 11 ...................................................................... 23
Fed. R. Civ. P. 12(h).............................................................. 7, 26
Fed. R. Civ. P. 14(a)(1)........................................................ 20, 21
Fed. R. Civ. P. 19(a)(1)........................................................ 20, 21
Fed. R. Civ. P. 20(a)................................................................. 38
Fed. R. Civ. P. 23 ...................................................................... 36
Fed. R. Civ. P. 23(a)(3) (1938) ................................................... 40
Fed. R. Civ. P. 23(b)(3)............................................................. 39
Fed. R. Civ. P. 23(c)(2)(B)(iv)................................................... 37
Fed. R. Civ. P. 24(b).................................................................. 38
Fed. R. Civ. P. 24(c) ............................................................ 19, 21
Fed. R. Civ. P. 25(a)(3)........................................................ 20, 21

## Treatises

Charles Allen Wright & Arthur R. Miller, 4 Fed. Prac. & Proc. Civ. § 1061 (4th ed. 2023) .............................................................................. 22
Charles Allen Wright & Arthur R. Miller, 4 Fed. Prac. & Proc. Civ. § 1064 (4th ed. 2023) .............................................................................. 26
Charles Allen Wright & Arthur R. Miller, 4 Fed. Prac. & Proc. Civ. § 1068.1 (4th ed. 2023) .............................................................................. 33
Charles Allen Wright & Arthur R. Miller, 7A Fed. Prac. & Proc. Civ. § 1752 (4th ed. 2023) .............................................................................. 40
Charles Allen Wright & Arthur R. Miller, 13 Fed. Prac. & Proc. Juris. § 3523 (3d ed. 2023) .............................................................................. 44

## Other Authorities

*Amendments to the Federal Rules of Civil Procedure and Forms*, 146 F.R.D. 401 (approved by the Supreme Court, Apr. 22, 1993).................... 15, 46

**INTRODUCTION**

With only limited exceptions, the Fair Labor Standards Act (FLSA) requires employers to pay employees a premium wage for working overtime hours. Believing its employees to be exempt, Defendant-Appellant Signet did not pay overtime rates to Plaintiff-Appellee Jose Ageo Luna Vanegas, who worked for Signet in Wisconsin and elsewhere, or to hundreds of other similarly situated workers. To recover his unpaid wages, Luna Vanegas sued under the FLSA in federal district court in Wisconsin. 29 U.S.C. § 216(b). The FLSA provides Signet's similarly situated employees a statutory right to join Luna Vanegas's suit to recover their withheld wages by filing a written "opt-in" consent with the court. *Id.*

The parties agree that Luna Vanegas validly served his complaint on Signet and that the district court obtained personal jurisdiction over Signet for the complaint. Signet now asks this Court to hold that similarly situated employees who worked for Signet in other states may not exercise their statutory right to join this proceeding because the district court lacks personal jurisdiction over Signet for those claims.

The district court properly rejected Signet's argument. The district court's exercise of jurisdiction over Signet for its employees' claims is consistent with Federal Rule of Civil Procedure 4(k). Rule 4(k) provides in relevant part that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant [] who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1). The Rule's

plain terms are met here: Signet concedes it is subject to personal jurisdiction in Wisconsin state courts with respect to Luna Vanegas's complaint, and that it was validly served with a summons, which "establishe[d] personal jurisdiction" over Signet. Rule 4(k)'s "territorial limits on effective service" incorporates state law only when "[s]erving a summons"; state law is not implicated after the summons has been properly served, including when other employees file notices of their consent to join the litigation.

This Court and the First Circuit have already held that Rule 4 applies only at the point the summons is served. *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447–48 (7th Cir. 2020); *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 93 (1st Cir. 2022). These decisions are consistent with the plain text and structure of the federal rules. *Mussat* further holds that personal jurisdiction in a representative action is decided based only on the named plaintiff, not on the similarly situated claimants represented by that plaintiff. 953 F.3d at 447–48. And, if binding precedent were not enough, supplemental personal jurisdiction—long recognized in this and most other circuits—allows the district court to adjudicate closely related claims against a party already properly made a defendant to the case. *E.g.*, *Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 450 (7th Cir. 2000).

Although two other circuits have stretched Rule 4(k) to imply an ongoing constraint on judicial power that extends through case developments even years after the summons was served, *see Fischer v. Fed. Express Corp.*, 42 F.4th 366, 386 (3d Cir. 2022); *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 400 (6th Cir.

2021), those decisions' rationales for departing from Rule 4(k)'s plain text are not persuasive.[1] The Court should affirm the district court and allow this FLSA collective action to proceed as Congress intended.

## STATEMENT OF JURISDICTION

Signet's Jurisdictional Statement is complete and correct.

## STATEMENT OF THE ISSUE

Whether, once personal jurisdiction over a defendant employer in an FLSA collective action is established under Federal Rule of Civil Procedure 4(k), employees exercising their statutory right to opt in to the action must independently establish personal jurisdiction over the defendant employer based on state law.

## STATEMENT OF THE CASE

### A. Legal Framework

The FLSA requires employers to pay covered workers a minimum hourly wage, 29 U.S.C. § 206, and a higher overtime rate for work in excess of forty hours per week, *id.* § 207. The Act's sweeping coverage includes every "employee,"—an "exceedingly broad" scope, *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 (1985)—unless an employee falls within one of the Act's numerated exemptions, *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 517 (1950).

---

[1] Signet also claims that the Eighth Circuit has adopted its position, but the key issues relevant to this appeal were uncontested before the Eighth Circuit, and the court simply assumed rather than decided them. *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021).
.

The FLSA provides a cause of action against employers who do not comply with the FLSA's minimum wage and overtime provisions. An employee may bring an action to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and [] an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). This "action to recover the liability prescribed … may be maintained against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* Thus, the FLSA allows a plaintiff to proceed both in an individual capacity and "as a named representative of a collective action." *Smith v. Pro. Transp., Inc.*, 5 F.4th 700, 701 (7th Cir. 2021).

 Collective actions by "similarly situated" employees provide "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," while allowing the judiciary to "efficient[ly] [resolve] in one proceeding [] common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). An employee who wishes to join a collective action may do so by filing a written consent with the court. 29 U.S.C. § 216(b). By filing this written consent, the opt-in employee agrees to be "bound by whatever judgment is eventually entered in the case." *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004).

As part of their "considerable authority to 'manage their own affairs … to achieve the orderly and expeditious disposition of cases,'" district courts have

discretion in managing the process by which potential opt-in employees are given notice of their right to join the suit. *Hoffmann-La Roche Inc.*, 493 U.S. at 169, 172–173 (citation omitted).

Courts in this Circuit follow a two-step process of conditional certification. First, at an earlier stage in the litigation, the district court decides "whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). Then, at a later stage, the court decides "on a fuller record … whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). Courts in this Circuit look to Rule 23's standards to guide the certification decision. *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012) ("*Espenscheid I*"); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("*Espenscheid II*").

## B. Procedural History

Signet "is a nationwide construction company that builds commercial, industrial, and agricultural structures." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 639 (7th Cir. 2022), *cert. denied*, 2023 WL 6377795 (U.S. Oct. 2, 2023). According to its website, Signet boasts "one of the largest legal workforces in the nation." https://perma.cc/7C23-GCVL. It builds large-scale structures throughout the country, including massive livestock enclosures in Wisconsin and elsewhere.

5

ECF No. 108, Am. Compl. ¶¶25–26, 33; *see also* Signet.us (assuring potential clients that there is "no job too remote" and that Signet "can move its teams throughout the country").[2]

To carry out its construction work, Signet employs large numbers of foreign visa workers admitted to the United States through H-2A visas, for temporary agricultural labor. Am. Compl. ¶¶ 16–35; 8 U.S.C. §§1101(a)(15)(H)(ii)(A) & 1188. Plaintiff Jose Luna Vanegas was one of the workers hired by Signet via the H-2A visa program to work on construction projects in Wisconsin and elsewhere. Am. Compl. ¶¶ 36–41.

Although Luna Vanegas and other similarly situated Signet employees routinely work over forty hours per week, Signet does not pay them overtime wages as is normally required by the Fair Labor Standards Act (FLSA). 29 U.S.C. § 207.[3] Signet asserts that it does not have to comply with this requirement because Luna Vanegas and similarly situated workers fall under the FLSA exception for employees engaged in agricultural work. *Luna Vanegas*, 46 F.4th at 639 (rejecting Signet's argument at the motion to dismiss stage).

---

[2] In the district court proceedings, "Signet" collectively refers to several defendants—Signet Builders, Inc., Signet Construction, LLC, Signet Construction, Inc., and Northridge Construction, Inc.—which are all construction companies operated as a single entity under the control of the three individual defendants who act as the corporate officers for all four companies. Am. Compl. ¶¶1, 54–56. Luna Vanegas agrees with Signet that these distinctions are immaterial to this appeal, Appellant's Br. 5 n.3, and refers to Signet as a singular entity in this brief.

[3] Signet pays workers overtime when required by state law.

In 2021, Luna Vanegas filed this suit on behalf of himself and all other similarly situated employees against Signet Builders, Inc., seeking a declaration that Signet's compensation policy is unlawful and to recover the overtime premium that Signet failed to pay. ECF No. 1; *see also* 29 U.S.C. § 216(b). The complaint and summons were served by a process server on Natalie Farmer, an owner and officer of Signet Builders, Inc., who was authorized to receive service of process on its behalf. App'x A-2. In lieu of an answer, Signet moved to dismiss the complaint, arguing that the FLSA's exemption for agricultural workers applies to the construction work its employees do on farms. ECF No. 25. The district court granted Signet's motion and dismissed the case, ECF No. 52, but this Court reversed, finding that Signet had "not carried [its] burden" of establishing, at the pleading stage, that the agricultural exemption applied. *Luna Vanegas*, 46 F.4th at 646. Signet then unsuccessfully petitioned the Supreme Court for certiorari. --- S.Ct. ----, 2023 WL 6377795 (Oct 2. 2023).[4]

Consistent with the two-step conditional certification process, Luna Vanegas asked the district court to conditionally certify a collective action and authorize providing notice to similarly situated employees who worked for Signet. App'x A-6. Signet opposed the motion, arguing, among other things, that "conditional certification must encompass only similarly situated employees who worked for

---

[4] On remand, Luna Vanegas obtained leave of court, ECF No. 107, to file an amended complaint that added Jose Garcia Gonzalez as a plaintiff, and the remainder of the Signet entities as defendants. ECF No. 108. Counsel for the newly added defendants accepted service, answered, and asserted no defect in service. ECF No. 115; *see also* Fed. R. Civ. P. 12(h).

Signet *in Wisconsin.*" *Id.* at A-13 (emphasis added). Signet claimed that although the district court has personal jurisdiction over Signet for Luna Vanegas's complaint, it lacks personal jurisdiction over Signet for claims brought by similarly situated employees who did not work in Wisconsin. *Id.*

The district court granted Luna Vanegas's motion for conditional certification. *Id.* at A-65. The court initially "decline[d] to resolve" the question of personal jurisdiction, reasoning that it is not appropriate to decide questions of jurisdiction in the abstract at the notice stage, particularly since it was unknown whether out-of-state employees would opt in. *Id.* at A-82. After Signet sought certification to immediately appeal the court's decision, *id.* at A-89, the district court reversed course and held that the court "need not separately consider personal jurisdiction over the claims of the potential out-of-state opt-in plaintiffs." *Id.* at A-144. The district court then certified that ruling for interlocutory appeal and stayed the entire case. *Id.* at A-146.

Signet then petitioned for permission to pursue an interlocutory appeal to this Court. Case No. 23-8020. Luna Vanegas opposed, arguing that the petition was premature because no worker, let alone any out-of-state worker, had yet opted into the action, and that the court should only resolve the personal jurisdiction question when presented with a live controversy. This Court granted the petition.

## SUMMARY OF ARGUMENT

As a threshold matter, the Court should dismiss this permissive interlocutory appeal as improvidently accepted because the issues on appeal are hypothetical at

this stage and thus do not warrant the Court's review. *See Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 658 (7th Cir. 1996) (holding merits panel may reconsider motion panel's decision to accept an interlocutory appeal).

Should the Court decide the appeal, the district court's decision should be affirmed. As a preliminary matter, this case raises no substantial constitutional question. After service of the summons, the Fifth Amendment's Due Process Clause provides the only relevant constitutional limit on a federal court's personal jurisdiction over federal law claims. The Fifth Amendment "requires only that the defendant possess sufficient contacts with the United States," not with any particular state. *United Rope Distributors, Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991). Because Signet is at home in the United States, the Fifth Amendment presents no obstacle to a federal court asserting personal jurisdiction over Signet.

Signet argues that state law nonetheless limits the court's exercise of personal jurisdiction over any future opt-in employees because, in Signet's view, Federal Rule of Civil Procedure 4(k) requires each opt-in employee in a collective action to establish personal jurisdiction over Signet for their individual claim. This argument fails at the outset because it lacks any textual basis in the Federal Rules. Rule 4(k)(1) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is

9

located." Signet acknowledges that Luna Vanegas established personal jurisdiction under Rule 4(k) for the original complaint—in a manner consistent with state law—and that is all Rule 4(k) requires.

Nothing in Rule 4(k)'s text or any other rule requires courts to reassess personal jurisdiction after the summons has been properly served. And this Court's holding in *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020) forecloses Signet's attempt to deviate from Rule 4(k)(1)(A)'s plain text. The structure and language of other Federal Rules of Civil Procedure—which conspicuously omit a personal jurisdiction requirement for later stages of litigation—further support this straightforward interpretation of Rule 4. Signet's invocation of drafting history and policy rationales are unpersuasive and offer no reason to depart from Rule 4(k)'s plain text.

Rule 4(k)'s inapplicability to later proceedings is fatal to Signet's other arguments. For the first time on appeal, Signet argues that Wisconsin's long-arm statute interposes another limitation on the federal court power, but that argument is both forfeited and wrong: Luna Vanegas's service of the summons against Signet was entirely consistent with Wisconsin law, and Wisconsin law does not govern post-summons proceedings of a federal claim in federal court.

Signet's reliance on the Supreme Court's 2017 decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255 (2017), on the personal jurisdiction limits of state courts is similarly misplaced. That argument again relies on the assumption that restrictions on state courts

apply to federal court after the summons has been properly served. Moreover, *Mussat* makes clear that *Bristol-Myers* does not apply to representative actions like this one.

In any event, if more were needed, the district court has supplemental personal jurisdiction over the opt-in employees' claims against Signet, as long recognized in this and other circuits. *Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 450 (7th Cir. 2000). The district court's decision to allow notice to be sent to similarly situated employees notifying them of their statutory right to opt in to this lawsuit should be affirmed.

## STANDARD OF REVIEW

This Court "review[s] a district court's management of a collective action—including the facilitation of notice—for abuse of discretion." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1048 (7th Cir. 2020). Factual findings related to a personal jurisdiction question are reviewed for clear error, while legal conclusions are reviewed *de novo. Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 911 (7th Cir. 2015).

## ARGUMENT

## I. The Court Should Dismiss the Appeal as Improvidently Accepted

As a threshold matter, the Court should dismiss this permissive interlocutory appeal as improvidently accepted. "Although the motions panel decided to accept the appeal, the merits panel is entitled to reexamine the decision of the motions panel." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d

656, 658 (7th Cir. 1996). As set forth more extensively in Plaintiff's Answer in Opposition to Signet's petition, the issue on appeal does not warrant the Court's review at this stage. Answer in Opp. to Signet Builders' Petition for Permission to Appeal, Seventh Cir. Case No. 23-8020. No non-Wisconsin worker has yet filed consent to join the suit, so Signet's jurisdictional challenge is currently hypothetical and abstract. *See Pyle-Nat'l Co. v. Amos*, 172 F.2d 425, 428 (7th Cir. 1949) ("It will be sufficient time to challenge the jurisdiction of the Court if and when the [new parties are] permitted to intervene. … If parties are brought in that would defeat jurisdiction, the District Court will meet that situation when it arises."). Moreover, even if Signet prevails on its appeal, the matter below will still proceed as both an individual and FLSA collective action (although of limited, rather than national, scope), and Luna Vanegas could, consistent with the court's invitation, App'x A-87, seek certification of a nationwide class action for his non-FLSA claims that challenge the same compensation policy. *Id.* at A-75. Accordingly, this Court's review of Signet's challenge now, before it has ripened into an actual controversy, will delay rather than expedite the ultimate resolution of the case.

## II.  The District Court Correctly Rejected Signet's Claim that Rule 4(k) Limits Personal Jurisdiction After the Summons is Properly Served.

If the Court decides to adjudicate Signet's appeal, it should affirm the district court's determination that Signet employees who worked on construction projects outside Wisconsin may opt in to this collective action without creating any personal jurisdiction problems.

First, the Fifth Amendment's Due Process Clause is the only constitutional limit that applies by its own force to a federal court's assertion of personal jurisdiction over a defendant for federal law claims. The Fifth Amendment "requires only that the defendant possess sufficient contacts with the United States," not with any particular state. *United Rope Distributors*, 930 F.2d at 534; *accord, e.g.*, *Abelesz v. OTP Bank*, 692 F.3d 638, 660 (7th Cir. 2012) ("The difference between litigating under state law in state court and under federal law in federal court is that the federal Constitution and federal law allow a plaintiff to aggregate a defendant's contacts with the entire nation rather than with the forum state.").

That limitation is easily met here: Signet is "at home" within the United States, and it has conceded it is subject to general personal jurisdiction in this country. *E.g.*, Appellant's Br. 14 n.6 ("Signet *is* subject to the jurisdiction of a state's courts of general jurisdiction," namely Texas); *id.* at 21 ("it is undisputed that Signet is a citizen of Texas"). There is no due process problem with a federal district court asserting personal jurisdiction over a defendant who is at home in the United States for a violation of federal law that happened in the United States.

Apart from the Fifth Amendment, the only rule regarding personal jurisdiction applicable to this lawsuit comes from Rule 4(k). Rule 4(k)(1) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Signet acknowledges that Luna Vanegas established personal jurisdiction over Signet for his complaint consistent

13

with Rule 4(k) and the law of the forum state, Wisconsin. *E.g.*, Appellant's Br. 14
("Luna Vanegas relied on Rule 4(k)(1)(A) to serve Signet with his Complaint and
Summons and thereby establish personal jurisdiction pursuant to Wisconsin law.");
*id.* at 21 ("Parties likewise do not dispute that Luna Vanegas worked for Signet in
Wisconsin and thus 'the court has specific jurisdiction over Signet for the claims of
[Luna] Vanegas, the only named plaintiff.'" (quoting App'x A-138)). Rule 4(k)
requires nothing more.

Signet's personal jurisdiction challenge rests on its assertion that Federal
Rule of Civil Procedure 4(k) requires each opt-in employee joining a collective action
also to establish personal jurisdiction over the defendant for their individual claim.
This atextual argument should be rejected. By its plain terms, Rule 4(k) applies
only to service of the summons, and not subsequent developments in the case.

Signet's argument fails both because it has no basis in the text or structure of
the rules and because it is foreclosed by this Circuit's precedent. The policy concerns
relied upon by Signet—and by the out-of-circuit decisions it cites—are misplaced
and offer no reason to depart from the plain text of the rules. As discussed further
in Parts III and IV, *infra* at pp. 29–34, because Rule 4(k) looks to state law to
determine whether service of the summons was effective, it does not bootstrap state
long-arm statutes and state-court jurisdictional limitations in the ongoing way that
Signet claims. Signet's reliance on the specifics of Wisconsin law and the Supreme
Court's decision in *Bristol-Myers* are thus misplaced.

## A. Rule 4(k)(1)(A)'s plain text looks to state law only when serving a summons or filing a waiver of service

Signet's argument fails at the outset because it has "no textual basis in Rule 4." *Waters*, 23 F.4th at 94; *see, e.g.*, *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980) ("The Federal Rules should be given their plain meaning."); *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) (holding when a Rule's text is "unambiguous, [the] judicial inquiry is complete" (internal citations and quotation marks omitted)). Both the Rule's text and its structure establish that, once a party has been brought into a case as a defendant through effective service of a summons, subsection (k)'s "territorial limits of effective service" are no longer relevant to subsequent proceedings.

Rule 4, entitled "Summons," sets forth details on serving the summons against a defendant, and Rule 4(k) specifies the "territorial limits of effective service" of that summons. The specific subsection at issue, Rule 4(k)(1)(A), applies when "serving a summons or filing a waiver of service." Once the summons is effectively served against a defendant who is amenable to service (such as being subject to personal jurisdiction in a state), the district court "establishes personal jurisdiction" over that defendant, *id.*,[5] and by its terms the Rule's application is complete.

---

[5] The focus of Rule 4 is on the *defendant,* as the "person [who] is joined as a *party against whom a claim* is made," 146 F.R.D. 401, 559 (1993 Amendments) (emphasis added), not on a particular claim or plaintiff. Fed. R. Civ. P. 4(k)(1) (stating the court "establishes personal jurisdiction *over a defendant*" (emphasis added)).

15

Had the Rules' drafters intended the sweeping, ongoing personal jurisdiction inquiry that Signet posits, they would not have buried it in a subsection of a highly technical rule on service of the summons. Like Rule 4(k) itself, the remainder of Rule 4 applies *only at the summons stage of the litigation*: it specifies what the summons must contain, Fed. R. Civ. P. 4(a), how to serve the summons, *id.* at (c), (e)-(j), the process for waiving service of a summons, *id.* at (d), the method for proving service of a summons, *id.* at (*l*), and the time for completing that service, *id.* at (m). "Indeed, Rule 4's title, 'Summons,' suggests that it is concerned only with service." *Waters*, 23 F.4th at 93. In other words, Rule 4 dictates how a defendant is first given formal notice of the lawsuit and the procedure through which the court establishes its power over that defendant as a party.

To be sure, "Rule 4(k)(1)(A) requires looking to state law to determine whether service is effective to confer [personal] jurisdiction." *Id.* at 94. "But this is not the same thing as saying that Rule 4['s]" incorporation of state law "governs district court jurisdiction in federal question cases *after* a summons has been properly served." *Id.* (emphasis added). Neither Signet nor the cases on which it relies point to any textual basis in Rule 4(k)(1)(A) suggesting it is triggered at a stage other than "[s]erving a summons or filing a waiver of service."

## B. This Court rejected Signet's theory of Rule 4 in *Mussat v. IQVIA*

The district court's adherence to Rule 4(k)(1)(A)'s plain text is further compelled by this Court's decision in *Mussat*. Like Signet, the defendant in *Mussat* "read[] Rule 4(k) broadly, as not requiring merely that a plaintiff comply with state-

based rules on the service of process, but also establishing an independent limitation on a federal court's exercise of personal jurisdiction." 953 F.3d at 447. This Court identified two problems with the defendant's argument. First, it is "in tension with Federal Rule of Civil Procedure 82," which emphasizes that the federal rules do not "limit the jurisdiction of the district courts." *Id.* at 448. Second, and more fundamentally, "Rule 4(k) addresses *how* and *where* to serve process" at the onset of the case; it does not impose an ongoing territorial limitation on whatever future developments might happen in the case. *Id.* (emphasis in original); *see also Waters*, 23 F.4th at 93–94  (the text of the Rule "nowhere suggests that Rule 4 deals with anything other than service of a summons, or that Rule 4 constrains a federal court's power to act once a summons has been properly served, and personal jurisdiction has been established"); *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 721 (2d Cir. 1980) ("The district court, having acquired personal jurisdiction over defendant, has power to determine all of the claims asserted in the complaint.").

Rather than grapple with this language in *Mussat*, Signet suggests that *Tamburo v. Dworkin*, 601 F.3d 693, 700–01 (7th Cir. 2010), holds otherwise. Appellant's Br. 12, 16. It does not. John Tamburo, an Illinois resident and business proprietor, brought a variety of federal and state law claims against an Australian company in Illinois federal court. 601 F.3d at 697–698. Tamburo argued that the district court had personal jurisdiction over defendant on two bases: 1) under nationwide service rules supplied by his federal anti-trust claim, Fed. R. Civ. P. 4(k)(1)(C), and 2) service effectuated consistent with state law under Rule

4(k)(1)(A). After finding that the complaint failed to state a claim under the federal anti-trust statute, the Court concluded Tamburo could not rely on that statute's service of process rules. 601 F.3d at 699–700 & n.6. The Court next found that the complaint did not satisfy Rule 4(k)(1)(A) because the defendant's contacts with the state were too attenuated to support personal jurisdiction under state law. *Id.* at 708. Without effective service under Rule 4(k) under either theory, the court lacked personal jurisdiction over the foreign defendant, who was properly dismissed.

Signet asserts that *Tamburo* reflects the Court's understanding that "regardless of the propriety of initial service, there must be 'a basis for acquiring personal jurisdiction over the defendants under [Rule 4(k)].'" Appellant's Br. 16 (citation omitted; alteration in original). The decision, however, does not even hint that the "propriety of initial service" was irrelevant to personal jurisdiction. The Court in *Tamburo* simply recognized that the district court never obtained personal jurisdiction over the defendant, as the plaintiff never satisfied rule 4(k)'s requirements. Put differently, the summons was never served on the defendant in a way that satisfied Rule 4(k).

Signet emphasizes that the *Tamburo* plaintiff was permitted to amend his complaint six times, *see* Appellant's Br. 12, but service of an amended complaint (or other documents) through Rule 5 does not give the district court personal jurisdiction over a defendant that it never obtained through effective Rule 4(k) service at the outset. By the same token, Rule 5 does not abrogate personal jurisdiction that *was* established over a defendant through Rule 4(k). *Tamburo* is

18

consistent with *Mussat*'s primary point: Rule 4(k) "governs service of process," and does not pose an ongoing "independent limitation on a federal court's exercise of personal jurisdiction" at later stages. *Mussat*, 953 F.3d at 447.

## C. The structure and language of other Rules support reading Rule 4(k)(1)(A) in accordance with its plain meaning.

The structure and language of other Federal Rules of Civil Procedure support this straightforward interpretation of Rule 4. With a single exception not applicable here,[6] after a party has been brought into the case as a defendant through effective Rule 4 service, all subsequent documents (including those that add additional plaintiffs or claims) must be served on that defendant pursuant to Rule 5. *See* Fed. R. Civ. P. 5(a)(1). Even Signet acknowledges "later-added claims do not require a new service of the summons upon the defendant" under Rule 4. Appellant's Br. 15; *accord, e.g.*, *Canaday*, 9 F.4th at 399–400 (acknowledging that opt-in employees serve their notices under Rule 5 instead of Rule 4). Significantly, unlike Rule 4, Rule 5 contains no territorial limits on effective service, and makes no reference to state personal jurisdiction law. *E.g., Fischer*, 42 F.4th at 386 ("Rule 5 does not tie personal jurisdiction to a state's service of process and personal jurisdiction rules.").

Other rules follow this same pattern, requiring only Rule 5 service when a new plaintiff joins a suit against a defendant already made part of the case. For example, if a party seeks to intervene as a new plaintiff, they need only serve their papers "as provided in Rule 5." Fed. R. Civ. P. 24(c). If a new plaintiff seeks to

---

[6] An additional pleading that adds a *new claim* against a *defaulting* defendant must be served under Rule 4. Fed. R. Civ. P. 5(a)(2).

substitute in for an existing one, service must be made "on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3). "[H]ad it been the FRCP drafters' intention to have Rule 4 govern more than the service of a summons, they could have simply said that additional plaintiffs may be added to an action if they could have served a summons on a defendant consistent with Rule 4(k)(1)(A). But that was not the choice the drafters made, and for good reason." *Waters*, 23 F.4th at 94.

In contrast, when the Rules call for a court to consider personal jurisdiction at later stages of the case, they do so "explicit[ly]." *Fischer*, 42 F.4th at 387 n.10. Rule 14(a)(1) requires service of a Rule 4 summons against an impleaded third-party defendant, which triggers a personal jurisdiction analysis. Fed. R. Civ. P. 4(k)(1)(B). Similarly, Rule 19(a)(1) limits involuntary joinder of required parties to those "who [are] subject to service of process." Fed. R. Civ. P. 19(a)(1). These situations call for a personal jurisdiction analysis because the court is asserting its authority over a new party for the first time. Neither of these rules is implicated here, where Signet is already a party to the case.

The exclusion of language triggering a personal jurisdiction analysis in the federal rules that *do* apply here speaks volumes: Under well-settled principles of statutory interpretation,[7] the choice to include a personal jurisdiction requirement in some rules and omit it from others is significant. *See, e.g.*, *Bittner v. United*

---

[7] The same "principles of statutory interpretation apply also to federal rules." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020); *accord, e.g., Pavelic & LeFlore*, 493 U.S. at 123.

*States*, 598 U.S. 85, 94 (2023) (holding that when a drafter "includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning (*expressio unius est exclusio alterius*)"); *Taylor v. Brown*, 787 F.3d 851, 857 n.7 (7th Cir. 2015) ("The fact that the drafters of the rules clearly included both 'actions' and 'claims' in Rule 41(b) but only mentioned 'actions' in Rule 41(a) is a strong indication that they intended there to be a distinction between the two provisions.").[8]

### D. Signet's references to drafting history do not advance its argument

Signet's invocation of the Rule's drafting history is unpersuasive. To start, drafting history (like legislative history) is no reason to depart from a Rule's plain text. *E.g.*, *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496 (2022) (noting, in the legislative history context, that "the text of a law controls over purported legislative intentions unmoored from any statutory text"). Moreover, and in any event, nothing in the history cited by Signet supports its reading of Rule 4(k).

Signet first argues that although the initial rule adopted in 1938 only concerned service of process, it was later amended to address personal jurisdiction.

---

[8] In a footnote, the Third Circuit acknowledged that Rules 14 and 19 explicitly imposed a personal jurisdiction requirement that was omitted from other rules, but nevertheless "decline[d] to read other joinder rules as implicitly authorizing the exercise of personal jurisdiction when those rules are silent as to service of process." *Fischer*, 42 F.4th at 387 n. 10. It offered no explanation to support the departure from the usual principles of interpretation. Moreover, as described more fully over the preceding paragraphs, the drafters' decision to impose a personal jurisdiction analysis when a new party is brought in (Rules 14 and 19) and not when new claims or parties are added against a defendant already in the lawsuit (for example, Rules 5(a)(1), 24(c), and 25(a)(3)) is a consistent pattern that holds across the federal rules.

But no one disputes that Rule 4(k) is about personal jurisdiction: it expressly says that the district court "establishes personal jurisdiction" over a defendant who is amenable to service of the summons. Fed. R. Civ. P. 4(k)(1); *see also Waters*, 23 F.4th at 94. Rule 4(k) has been amended several times to increase the range of ways that service of summons establishes a district court's personal jurisdiction. Charles Allen Wright & Arthur R. Miller, 4 Fed. Prac. & Proc. Civ. § 1061 (4th ed. 2023). But none of this history explicitly or implicitly requires a district court to take any additional steps to maintain personal jurisdiction that it has *already* "establishe[d]" over a defendant that had been properly served with a summons under Rule 4(k).

Nor is it relevant that the Advisory Committee on the Civil Rules briefly considered (but did not pursue) a scholar's proposal in 2018 to expand Rule 4(k) to allow for Rule 4(k) service whenever consistent with the Fifth Amendment. Appellant's Br. 17–18. "[A]rguments based on subsequent legislative history . . . should not be taken seriously, not even in a footnote," *Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990) (Scalia, J., concurring in part), and the failure to adopt a subsequent amendment to a law is "a particularly dangerous ground" on which to base an interpretation of that law, *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990). In any event, the proposed amendment (which would have allowed for assertions of personal jurisdiction even when effective service was not available under state law, Advisory Comm. on Civ. Rules, Agenda Book for April 10, 2018 Meeting 336–37, https://www.uscourts.gov/sites/default/files/2018-04-civil-rules-agenda-book.pdf) is irrelevant to the circumstances here. There is no dispute

that Signet was effectively served under state law and Rule 4(k) as it currently exists, so the fact the Rule was not amended to allow for service under other circumstances is entirely beside the point.

### E. Signet's policy arguments for departing from the Rule's plain language are unpersuasive

Signet offers a handful of policy arguments for departing from the Rule's plain language, but none are persuasive.

*First*, Signet complains that adhering to the Rule's text would allow a hypothetical future plaintiff to evade Rule 4(k)'s limits by filing a complaint with "frivolous federal law claims against a nonresident defendant under statutes that authorize nationwide service of process, serv[ing] the defendant under Rule 4(k)(1)(C), then drop[ping] those claims and litigat[ing] completely unrelated claims against the defendant in whichever federal district the plaintiff chooses." Appellant's Br. 16. It is well-settled, however, that frivolous claims do not supply courts with jurisdiction, *e.g.*, *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013) (subject matter jurisdiction), and a complaint that fails to state a claim under a federal statute authorizing nationwide service of process cannot support an effective service of process under Rule 4(k)(1)(C), *Tamburo*, 601 F.3d at 700–01 n.6 (rejecting service under Rule 4(k)(1)(C) when the complaint failed to state a viable claim arising under federal law). Should parties make frivolous assertions, Rule 11 provides the courts with ample means to punish and deter such misconduct. And should a case be brought in an inconvenient or inappropriate

23

forum, courts have the power to transfer the case to a better venue. 28 U.S.C. §§ 1404(a), 1406(a).

To the extent that Signet implies that *this* case was improperly brought in Wisconsin, Appellant's Br. 2, that suggestion is without merit. Wisconsin was where Luna Vanegas primarily worked for Signet, and it was the logical venue choice for his claims that he was underpaid for that work. Signet seems to prefer that the lawsuit be brought in Texas, but Luna Vanegas—like the vast majority of Signet's workforce—never worked in Texas and has no other connection to the state. Luna Vanegas correctly filed suit in the federal district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Nothing in the FLSA negates the usual rules of venue, or forces a plaintiff to sue in a state in which he might have never set foot.

*Second*, Signet suggests that personal jurisdiction is such a "'core limitation[] on judicial power'" that it justifies departing from routine application of the federal rules. Appellant's Br. 16 (quoting *Canaday*, 9 F.4th at 400). The Supreme Court has already rejected that argument, explaining that while subject matter jurisdiction "is an Art. III as well as a statutory requirement" that "functions as a restriction on federal power, and contributes to the characterization of the federal sovereign," "[n]one of this is true with respect to personal jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Accordingly, there is nothing "unique about the requirement of personal jurisdiction" that limits a court's "use of procedural rules" to find personal jurisdiction. *Id*. at 706–07; *see also, e.g.*,

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 145 (2023) (plurality opinion) (noting "a legion of precedents [] attach [personal] jurisdictional consequences to what some might dismiss as mere formalities"); *Adam v. Saenger*, 303 U.S. 59, 67–68 (1938) (rejecting argument that due process clause precludes exercise of personal jurisdiction over a party already part of a case for a new cross-complaint).

 *Third*, there is nothing unusual about determining personal jurisdiction at the moment the summons is served. *See* Appellant's Br. 4. The link between formal service of the summons and establishment of personal jurisdiction has been long recognized: "service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946); *see also, e.g.*, *Williams v. Leach*, 938 F.2d 769, 774 (7th Cir. 1991) ("[S]ervice of process … marks the court's assertion of jurisdiction over the lawsuit"). Thus, for example, a state obtains personal jurisdiction over a person who is served with process within the state's territory and retains that jurisdiction through judgment, no matter how fleeting the person's visit or otherwise unconnected that person is to the state. *Burnham v. Superior Ct. of Cal., County of Marin*, 495 U.S. 604, 610–11 (1990) (plurality op.) (describing this as "[a]mong the most firmly established principles of personal jurisdiction in American tradition"). Similarly, a state may obtain personal jurisdiction over a corporation by serving that entity's agent within the state. *E.g.*, *Mallory*, 600 U.S. at 133 (deeming the designation of a registered agent as

25

consenting to jurisdiction); *Ex parte Schollenberger*, 96 U.S. 369, 376–77 (1877).[9]

That initial service is all that is needed: "It uniformly has been held that

jurisdiction acquired at the beginning of litigation will persist until the case's end

regardless of whether the court maintains continuing physical power over the

defendant." Charles Allen Wright & Arthur R. Miller, 4 Fed. Prac. & Proc. Civ. §

1064 n. 16 (4th ed. 2023). Other Federal Rules similarly contemplate personal

jurisdiction questions being raised at the onset of the case. Fed. R. Civ. P. 12(h)

(providing that a party that does not object to personal jurisdiction in first response

to complaint waives the defense).

\* \* \*

At bottom, Signet's argument invites this Court to apply the federal rules not

as written but how Signet thinks they should work. This approach flies in the face

---

[9] This appears to be the case in Wisconsin. To transact business in Wisconsin, all foreign corporations must designate a registered agent within the state, Wis. Stat. § 180.1507, who becomes the "foreign corporation's agent for service of process," Wis. Stat. § 180.1510(1). Under longstanding principles of state law, service on an agent within a state is sufficient to establish personal jurisdiction over a foreign defendant. *E.g.*, *Punke v. Brody*, 17 Wis. 2d 9, 14, 115 N.W.2d 601, 604 (1962); *State ex rel. Ledin v. Davison*, 216 Wis. 216, 216, 256 N.W. 718, 720 (1934) ("[S]ervice of process upon a nonresident is effective when he has either expressly or by implication of law appointed a resident agent or lawful attorney upon whom legal process may be served and when service is made upon the agent or attorney"). However, in 2017, a divided Wisconsin Supreme Court interpreted Wis. Stat. § 180.1507 narrowly because it thought "the Supreme Court has made clear that the Due Process Clause" prohibited the exercise of personal jurisdiction based on such service. *Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 2017 WI 71, ¶ 31, 376 Wis. 2d 528, 555, 898 N.W.2d 70, 83. Earlier this year, the Supreme Court rejected the Wisconsin Supreme Court's interpretation of the Due Process Clause, *Mallory*, 600 U.S. at 134, and it is unlikely that the Wisconsin Supreme Court would adhere to its 2017 decision.

of repeated admonitions from the Supreme Court that "courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Jones v. Bock*, 549 U.S. 199, 212 (2007). Instead, "[t]he Federal Rules should be given their plain meaning," *Walker*, 446 U.S. at 750 n.9, and when faced with language that is "unambiguous, judicial inquiry is complete," *Pavelic & LeFlore*, 493 U.S. at 123 (internal quotation marks and citation omitted); *accord, e.g.*, *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540–41 (1991). This Court has likewise repeatedly rejected attempts to depart from the rules based on arguments from policy or purpose. *E.g.*, *Marcure v. Lynn*, 992 F.3d 625, 630 (7th Cir. 2021) (noting that a party's purpose-driven "reading of [a Rule of Civil Procedure] ignores the rule's plain text and so fails to persuade us"); *DeRango v. United States*, 864 F.2d 520, 523–24 (7th Cir. 1988) (rejecting argument that "harsh results" allow departure from a rule's plain language). Signet's desire to make Rule 4(k) apply to something other than service of the summons "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Jones*, 549 U.S. at 217 (citation omitted).

Signet's position further clashes with the "spirit and inclination of the rules favor[ing] decisions on the merits." *Schiavone v. Fortune*, 477 U.S. 21, 27 (1986); *see also id.* (noting the "principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts" (citation omitted)). "Congress has stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively. A collective

action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche Inc.*, 493 U.S. at 170 (discussing collective action in context of ADEA); *see also Bigger*, 947 F.3d at 1049 ("The twin goals of collective actions are enforcement and efficiency: enforcement of the FLSA, by preventing violations of the overtime-pay requirements and by enabling employees to pool resources when seeking redress for violations; and efficiency in the resolution of disputes, by resolving in a single action common issues arising from the same alleged illegal activity.").[10]

No matter how this Court resolves Signet's appeal, Signet will be litigating in Wisconsin whether its refusal to pay overtime to its workers is lawful. The sole question is whether other workers who are subject to Signet's no-overtime policy can opt in through the collective action mechanism Congress expressly provided, or whether they must file new suits in each state where the employees worked, causing the same question to be litigated in multiple courts. Nothing in the Rules prevents this lawsuit from proceeding efficiently as a collective action in front of a

---

[10] It is no answer to say that Luna Vanegas might have brought this lawsuit in Texas. The FLSA allows a plaintiff to sue in "any" court of competent jurisdiction, not just the one that the employer prefers. 29 U.S.C. § 216(b). Luna Vanegas, like nearly all of Signet's employees, did not work in Texas, and nothing requires him to litigate in a distant place unconnected to the facts underlying the controversy. Signet, in contrast, is a company with a nationwide workforce, and concedes that it is answerable in Wisconsin for Luna Vanegas's claims.

court that established personal jurisdiction over Signet for the named plaintiff's claim.

### III.    Signet's Invocation of Wisconsin's Long-Arm Statute is Forfeited, Irrelevant, and Wrong

Signet argues that Wisconsin's long-arm statute, Wis. Stat. § 801.05, disallows any future opt-in employees who worked for Signet in other states to join this collective action. Appellant's Br. 21-25. This argument was never raised below, misinterprets state law, and conflicts with the way in which federal courts look to state law.

As an initial matter, Signet did not cite Wisconsin's long-arm statute in its brief in opposition to certification of a collective action. App'x A-11 to -39. Nor did it raise the issue when it sought permission for an interlocutory appeal. *Id*. at A-89 to -104; *id*. at A-119 to -137. This Court has consistently held "that a party forfeits an argument not raised before the district court," *Siddique v. Laliberte*, 972 F.3d 898, 905 (7th Cir. 2020) (citation omitted), and in civil cases only "truly extraordinary circumstances" warrant consideration of an argument made for the first time on appeal. *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015) (citation omitted). Signet should not be allowed to argue that "the District Court overlooked" a statute, Appellant's Br. 22, that Signet did not cite.

Signet made only a single, generic reference to Wisconsin's long-arm statute in its briefing below, suggesting that the statute follows the limits of due process. App'x A-32 ("[T]he scope of a court's personal jurisdiction is governed by the state's long-arm statute pursuant to Fed. R. Civ. P. Rule 4, which, in most states, including

Wisconsin, in turn imports the Fourteenth Amendment's due process protections."). On appeal, it takes the exact opposite position, asserting that "Wisconsin's statute has not been amended to expressly provide that it applies to the broadest extent permitted by the Due Process Clause." Appellant's Br. 25. Signet was right the first time: "Wisconsin's long-arm statute, Wis. Stat. § 801.05, has been interpreted to confer jurisdiction 'to the fullest extent allowed under the due process clause.'" *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012) (citation omitted); *see also id.* ("Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process."); *accord, e.g.*, *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶ 20, 335 Wis. 2d 1, 15, 803 N.W.2d 623, 630 (noting that "§ 801.05 'was intended to provide for the exercise of jurisdiction over nonresident defendants to the full extent consistent with the requisites of due process of law.'" (citation omitted)).

　　In any event, Signet's newfound reliance on Wisconsin's long-arm statute fares no better than its other arguments. As discussed in Part II, *supra* at pp. 12–28, Rule 4(k)(1) incorporates state law on personal jurisdiction *when the summons is served*, and not thereafter. After the summons is served, state law fades away, and the federal rules govern subsequent developments.

　　Thus, for example, a state could pass a law that required (as Signet wants) a new summons to be served and a fresh personal jurisdiction analysis every time a new plaintiff is added or an additional employee opts in. (Of course, Wis. Stat. §

801.05(13) is not such a law, as it speaks only to joinder of "claims," not parties). Such a law would impose a restriction on FLSA opt-in employees that conflicts with the FLSA (which allows employees to join simply by filing written consent with the court, 29 U.S.C. § 216(b)) and with the federal rules of service and joinder that do not require such service (as discussed *supra* at pp. 15–20). Thus, this hypothetical law would not control in federal court. *See, e.g.*, *Hanna v. Plumer*, 380 U.S. 460, 466 (1965) (rejecting, under *Erie* doctrine, federal court use of state rules on service of process that conflicted with Rule 4). It is the federal rules, not a Wisconsin statute, that governs how this federal lawsuit should proceed after service of the summons.

## IV. *Bristol-Myers* is Inapplicable to Collective Actions Brought Under Federal Law in Federal Court

Signet also argues that the Fourteenth Amendment's Due Process Clause, as applied in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255 (2017), precludes the district court from exercising personal jurisdiction over any future opt-in employees who did not work in Wisconsin. Appellant's Br. 25-28. This argument fails for two independent reasons. First, *Bristol-Myers* addresses the due process limits imposed by the Fourteenth Amendment on the jurisdiction of *state* courts; federal courts are not subject to those limitations, but rather are governed by Fifth Amendment limitations that (as discussed *supra* at p. 13) are indisputably satisfied here. Second, even if *Bristol-Myers*'s holding extended to federal courts, this Court has already recognized that

*Bristol-Myers* does not limit district courts' power to exercise personal jurisdiction in representative actions.

### A. Signet's argument that *Bristol-Myers'* limitation on state courts applies post-summons relies on its misinterpretation of Rule 4(k)

In *Bristol-Myers*, hundreds of plaintiffs brought a series of lawsuits in California state court against a defendant based on the east coast. Most of the plaintiffs had no other affiliation with California, and were suing based on harm that occurred outside of California. The defendant moved to quash service of summons of the non-Californians' claims,[11] arguing that the Fourteenth Amendment's due process limit on the power of state courts precluded the exercise of personal jurisdiction over lawsuits by those plaintiffs. The California Supreme Court adopted a "sliding scale approach to specific jurisdiction," where a defendant's unrelated contacts with the state could be aggregated to supply specific personal jurisdiction over a non-resident's lawsuit that otherwise was unconnected to the state. *Bristol-Myers*, 582 U.S. at 260 (citation omitted).

The Supreme Court reversed, applying "settled principles regarding specific [personal] jurisdiction" to reject the state's exercise of personal jurisdiction over lawsuits filed by plaintiffs lacking a connection to the state. *Id.* at 264. For a state court to exercise specific personal jurisdiction over a defendant for a plaintiff's claim, "there must be an affiliation between the forum and the underlying controversy." *Id.* (internal quotation marks and citation omitted). "When there is no

---

[11] This procedural posture underscores once more the relationship between service of the summons and personal jurisdiction. *See supra* at pp. 25–26.

such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* (citation omitted). The Court based its holding on the Fourteenth Amendment, which in this context embodies a "decisive" "federalism interest": each state must adhere to the "territorial limitations on the power of the respective States," which ensures that other states retain "the sovereign power to try causes in their courts." *Id.* at 263 (internal quotation marks and citations omitted).

Signet's argument for applying *Bristol-Myers*'s limitation on *state* courts to a federal court at this stage of the litigation depends on its flawed interpretation of Rule 4(k). How *Bristol-Myers* would play out in Wisconsin state courts is relevant only if Rule 4(k) incorporates post-summons, ongoing state-based limitations, which it does not.

Indeed, "[i]t would be anomalous to apply the Fourteenth Amendment, rather than the Fifth Amendment, to federal causes of action after a summons is properly served." *Waters*, 23 F.4th at 94; *see also United Rope Distribs.*, 930 F.2d at 536. The "decisive" federalism interests that drove *Bristol-Myers* have no relevance here: "When a federal court adjudicates a federal question claim, it exercises the sovereign power of the United States and no federalism problem is presented." Charles Allen Wright & Arthur R. Miller, 4 Fed. Prac. & Proc. Civ. § 1068.1 (4th ed. 2023).

Because Rule 4(k) looks to state law only at the time of the summons, and there is no dispute that a Wisconsin state court could have exercised specific

33

personal jurisdiction over Signet for Luna Vanegas's complaint based on relevant contacts, *Bristol-Myers* is irrelevant.

### B. *Mussat* also forecloses Signet's *Bristol-Myers* argument

In *Mussat*, this Court considered whether, in light of *Bristol-Myers*, personal jurisdiction over a defendant in a federal class action must be separately established for each member of the class. The Court answered no, concluding that personal jurisdiction "depends only on the named plaintiffs." *Mussat*, 953 F.3d at 445. By meeting Rule 23's requirements, "the lead plaintiffs earn the right to represent the interests of absent class members," who are then bound by the outcome of their representative's case. *Id.* at 446–47. Were it otherwise, this Court noted, "nationwide class actions will, as a practical matter, be impossible any time the defendant is not subject to general jurisdiction," a result "far from the routine application of personal-jurisdiction rules" that *Bristol-Myers* said it was applying. *Id.* at 446; *cf. Hansberry v. Lee*, 311 U.S. 32, 41 (1940) ("Courts are not infrequently called upon to proceed with causes in which the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction.").

As the district court recognized below, *Mussat*'s logic applies to collective actions as well. Although unacknowledged in Signet's brief, Appellant's Br. 28–31, this Circuit has repeatedly recognized and stressed the similarities between class actions and collective actions. *E.g.*, *Espenscheid II*, 705 F.3d at 772. Like class actions, collective actions are "genuine representative action[s]," *Woods v. N.Y. Life*

*Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982), where the named plaintiff litigates "in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *accord, e.g., Smith*, 5 F.4th at 705 (noting that a named FLSA plaintiff proceeds in both "an individual and a representative capacity"). All similarly situated employees who opt in agree to be "bound by whatever judgment is eventually entered in the case." *Harkins*, 385 F.3d at 1101. In approving FLSA settlements, "the court serves as 'a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries.'" *Binissia v. ABM Indus., Inc.*, No. 13-cv-1230, 2017 WL 4180289, at *2 (N.D. Ill. Sept. 21, 2017) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)).

The similarities in process and effect between class and collective actions drove this Court to apply the same certification standard to both. "Collective actions are certified and decertified just like class actions." *Espenscheid I*, 688 F.3d at 877. "[T]here isn't a good reason to have different standards for the certification of the two different types of action," so this Court "has largely merged the standards," looking to Rule 23 to govern both types of actions. *Espenscheid II*, 705 F.3d at 772; *see also id.* (concluding that the court could, "with no distortion of our analysis, treat the entire set of suits before us [including a collective action] as if it were a single class action").

Signet's proposed distinction between class and collective actions is particularly untenable considering the reality that a plaintiff might combine both actions into a single suit: a FLSA collective action proceeding alongside a Rule 23

class over non-FLSA claims. *Ervin,* 632 F.3d at 974 (allowing such combined actions). Indeed, in this very case, the district court has given Luna Vanegas an opportunity to move to have his non-FLSA contract claims—which arise out of the same factual situation and turn on the same question regarding the applicability of the FLSA agricultural exemption—certified as a nationwide Rule 23 class. App'x A-87. If this Court were to rule in Signet's favor in this appeal, existing law would make it possible to certify a nationwide contract class challenging Signet's use of the FLSA agricultural exemption, while prohibiting out-of-state members of that class from opting into the FLSA collective action challenging the same exemption. If these employees wanted to pursue their FLSA remedies, they would have to file a separate lawsuit in another district—even as the district court here adjudicates their rights under state law based on the same compensation policy and basic facts. The FLSA collective action is meant to make resolution of wage actions more efficient for everyone involved; the vision offered by Signet accomplishes inefficiency without purpose.

Signet's primary argument for distinguishing *Mussat* seizes on labels. Noting that *Mussat* observed that "absent class members are not full parties to the case for many purposes," Appellant's Br. 28 (internal quotation marks omitted), Signet points out that the employees who opt in to a collective action are often called "parties," *id.* at 28-31. But as this Court also noted in *Mussat*, whether someone is called a "party" is not the key: "[N]onnamed class members ... may be parties for some purposes and not for others. The label 'party' does not indicate an absolute

characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.'" 953 F.3d at 447 (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002)). It does not matter what the FLSA opt-in employees are called, but the nature of their relationship to the litigation.

When it comes to their role in the case, opt-in FLSA employees are functionally equivalent to Rule 23 class members in every significant way. Like class members, the opt-in employees' FLSA claims are tied to the fate of whatever judgment or settlement is entered against their representative. *Harkins*, 385 F.3d at 1101. Although Rule 23 class members have the right to "enter an appearance through an attorney if the member so desires," Fed. R. Civ. P. 23(c)(2)(B)(iv), they typically depend on class counsel to represent their interests. The same is true of opt-in employees, who rely on the "capacity of the 'class' counsel to win a judgment" in their favor, rather than proceed through their own lawyers. *Harkins*, 385 F.3d at 1101; *accord, e.g., Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 631–32 (W.D. Wis. 2009) ("[P]laintiffs' counsel … litigat[es] for and in behalf of all opt-in plaintiffs. … [A]llowing each opt-in plaintiff to have his or her own lawyer is simply not workable. Potential plaintiffs who want a different lawyer are free to take action on their own instead of opting into the suit." (internal alterations and quotation marks omitted)). Opt-in employees are also not subject to the automatic burdens of discovery that a named party faces. *E.g., Smith v. Fam. Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *1 (N.D. Ill. Mar. 31, 2015) (allowing discovery against only a small sample of opt-in employees).

Rather than assume full party status, opt-in employees' connection to the litigation is entirely a function of the collective action. If no collective action is ever certified, opt-in employees are not part of the case at all, "just as in Rule 23 class actions." *Hollins v. Regency Corp.*, 867 F.3d 830, 833–34 (7th Cir. 2017). "And 'when a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs'—which is just what happens when a Rule 23 class is decertified." *Espenscheid I*, 688 F.3d at 877 (citation omitted). And like Rule 23 class members, an employee who opts-in to the FLSA collective action does not participate in any of the other claims in the lawsuit and is not bound by the judgment with respect to those claims.

Signet is wrong to suggest that Luna Vanegas's opt-in consent form (as required by *Harkins*, 385 F.3d at 1101) somehow means that there is no difference in status between the named plaintiff representative and an opt-in employee who is only part of the collective. Appellant's Br. 30. Luna Vanegas is clearly more than just an opt-in employee: he filed and served the complaint, briefed motions and appeals, and is otherwise litigating this action on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). If the collective action is decertified, Luna Vanegas will remain part of this case, while any employees who opted in will not. Of course, being a member of the collective will not disqualify an employee from *also* joining as a full plaintiff in the case, but something more than filing an opt-in form would need to happen, such as being named in an amended

complaint, being joined as a plaintiff, Fed. R. Civ. P. 20(a), or successfully moving to intervene, Fed. R. Civ. P. 24(b).

As the district court noted, this Court's precedents "reflect[] the reality of collective action litigation." App'x A-143. Typically, "[t]he opt-in members do not actively participate in, let alone control, the litigation. The opt-ins are for nearly all purposes absent parties whose interests the court must step in to protect, just as the court must consider and protect the interests of the unnamed Rule 23 class members who will be bound by a settlement in which they did not participate." *Id.*

As this Court has determined, the "only difference of moment" between a member of a class action and a collective action "is that in a collective action the members of the class (of the 'collective') must opt into the suit to be bound by the judgment or settlement in it, while in a class action governed by Rule 23(b)(3) (a class action seeking damages) they must opt out *not* to be bound." *Espenscheid II*, 705 F.3d at 771. Signet offers no explanation for why the distinction in *how* a claimant's interests are joined into the lawsuit matters for personal jurisdiction. "There is no relevant difference between the collective, consisting of opt-ins, and the class, consisting of class members minus the opt-outs." *Espenscheid I*, 688 F.3d at 877.

Notably, FLSA collective actions *were considered* class actions under the Rule 23 framework that existed prior to 1966. *E.g., United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 222 (1952) ("[I]ndividual or class actions for restitution and damages in [29 U.S.C. § 216(b)]) are … the remedies more frequently invoked

39

and more effective in achieving the purposes of the [FLSA].”); *Kainz v. Anheuser-Busch, Inc.*, 194 F.2d 737, 740 (7th Cir. 1952) (“[C]lass actions have been approved where separate employees join to recover compensation under the Fair Labor Standards Act”). As originally adopted in 1938, Rule 23 contemplated three types of class actions, including the “spurious” class. Charles Allen Wright & Arthur R. Miller, 7A Fed. Prac. & Proc. Civ. § 1752 (4th ed. 2023) (citing Fed. R. Civ. P. 23(a)(3) (1938)). The spurious class was an opt-in class, where a representative “may present the grievance to a court on behalf of all, and the remaining members of the class may join as they see fit.” *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 88 (7th Cir. 1941). As Judge Clark, primary architect of the federal rules, wrote for the Second Circuit, a spurious class would not “affect legally the rights or obligations” of those who do not join. *All Am. Airways v. Elderd*, 209 F.2d 247, 248 (2d Cir. 1954). Nevertheless, the spurious class was a representative action that allowed for joining of many individual claims while still “justifying federal jurisdiction otherwise endangered.” *Id.* at 248 n.1; *see also*, *e.g.*, *Zachman v. Erwin,* 186 F. Supp. 681, 689 (S.D. Tex. 1959) (“The ability of other persons similarly situated to intervene without regard to jurisdictional limitations applicable to the original parties is the raison d’etre of the spurious class suit.”). The contention that FLSA collective actions are categorically distinct from class actions is ahistorical and inconsistent with what Congress would have understood it was enacting with the FLSA.[12]

---

[12] Although not raised by Signet, some courts misread the significance of the Portal-to-Portal Act of 1947, which “limit[ed] private FLSA plaintiffs to employees who asserted claims in their own right” by forbidding uninjured parties (like union

*Continued on next page.*

Signet's primary response to decades of this Court's precedent equating class and collective actions is to ignore it. *Contra Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) (noting that litigants "may not simply ignore" binding circuit precedent). Remarkably, Signet criticizes the "District Court's characterization of FLSA opt-in plaintiffs as 'for nearly all purposes absent parties' analogous to Rule 23 class members," Appellant's Br. 30, but fails to acknowledge the binding circuit precedent that the district court pointed to in support of its conclusion. App'x A-142 to -43 (citing *Espenscheid I*, 688 F.3d at 877; *Espenscheid II*, 705 F.3d at 772; *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018)). This Court's repeated holdings on FLSA collective actions foreclose Signet's argument.

Rather than grapple with Seventh Circuit law, Signet relies on out-of-circuit and district court decisions. For example, Signet cites the Sixth Circuit's statement in *Canaday* that "'[a] Rule 23 class action is representative, while a collective action under the FLSA is not.'" Appellant's Br. 29 (quoting *Canaday*, 9 F.4th at 402). As emphasized above, that is the opposite of the law of this circuit. *E.g.*, *Espenscheid II*, 705 F.3d at 772. The Third and the Sixth Circuits both assume that FLSA collective actions do not meet Rule 23's requirements, *Canaday*, 9 F.4th at 403; *Fischer*, 42 F.4th at 377, which again is not the law here. *Espenscheid II*, 705 F.3d

---

representatives) from representing collective actions. *Hoffmann-La Roche Inc.*, 493 U.S. at 173. However, "Congress left intact the 'similarly situated' language providing for collective actions, such as this one," *id.* and this Court has specifically held that, despite the 1947 Portal-to-Portal Act amendments, § 216(b) "creates a genuine representative action," *Woods*, 686 F.2d at 581.

at 772. The differences between circuit law make *Canaday*'s reasoning unpersuasive.

Signet also claims that the First Circuit's decision in *Waters* "specifically premised its opinion on the conclusion that FLSA opt-in plaintiffs *are* parties." Appellant's Br. 31. This part of *Waters* arose in the context of deciding whether dismissed opt-in employees were permitted to appeal, not on the personal jurisdiction implications of their status. *Waters*, 23 F.4th at 89. (*Waters* noted that this portion of its holding was in tension with this Court's precedent in *Hollins*, 867 F.3d at 833, another binding precedent that Signet does not cite.) Whether opt-in employees are considered "parties" for some purposes (like the ability to appeal) is beside the point. *See Mussat*, 953 F.3d at 447 ("The proper characterization … depends on the issue."). As discussed, the opt-in employees' interests are represented by the named plaintiffs' and their counsel, and their connection to the litigation is entirely a function of the existence of a certified collective action. They "are not full parties to the case for many purposes." *See Mussat*, 953 F.3d at 447.

Although Signet briefly cites the Supreme Court's decision in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013), Appellant's Br. 29, nothing in that decision is relevant to the issues here. *Genesis Healthcare* was a case about mootness. The Court held that an FLSA plaintiff whose claim was mooted before she moved to certify a collective action lacked "a sufficient personal stake" that would allow her to represent similarly situated employees. *Genesis Healthcare*, 569 U.S. at 74. The Court applied its precedents on mootness in the class action context

to the putative collective action, holding that, under either process, a named plaintiff whose claims are mooted before seeking certification cannot proceed. This holding did not disrupt well-settled circuit precedent, and this Court has continued to follow its precedent on collective actions. *E.g.*, *Hollins*, 867 F.3d at 834.

In sum, decades of circuit precedent emphasizing the relevant similarities between class and collective actions foreclose Signet's efforts to distinguish *Mussat*. If *Mussat*'s holding is not followed here, then nationwide collective actions "will, as a practical matter, be impossible any time the defendant is not subject to general jurisdiction." *Mussat*, 953 F.3d at 446. That would be contrary to Congress's intent in creating the collective action form as a mechanism for "efficient resolution in one proceeding" of FLSA disputes, benefiting employees, employers, and the judiciary alike. *See Hoffmann-La Roche Inc.*, 493 U.S. at 170. It would also be contrary to the pre-*Bristol-Myers* practice of courts adjudicating nationwide FLSA collective actions. *E.g.*, *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 758 (7th Cir. 2017); *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1241 (11th Cir. 2008). The damage would not be limited to the FLSA but would extend to other federal statutes providing the collective action remedy. 29 U.S.C. § 626(b) (Age Discrimination in Employment Act); 29 U.S.C. § 206(d) (Equal Pay Act). Signet's interpretation of *Bristol-Myers* would also disrupt the long-accepted practice of consolidating multidistrict litigation under 28 U.S.C. § 1407. *E.g., In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1380 (J.P.M.L. 2020) ("We are not persuaded that

*Bristol-Myers* necessitates unraveling more than forty years of MDL jurisprudence.").

This devastation to federal statutes and settled precedent is "far from the routine application of personal-jurisdiction rules that *Bristol-Myers* said it was performing." *Mussat*, 953 F.3d at 446. Nothing in *Bristol-Myers* or the federal rules requires such an outcome.

## V. In the Alternative, the District Court has Supplemental Personal Jurisdiction over Signet for the Opt-In Claims

As explained above, there is no dispute that the district court's personal jurisdiction over Signet was established under Rule 4(k) for Luna Vanegas's complaint, and there is no basis in the federal rules, Wisconsin law, or *Bristol-Myers* for imposing an additional personal jurisdiction inquiry for subsequent claims. Signet's challenge additionally fails, however, because even apart from the personal jurisdiction already established in this litigation pursuant to Rule 4(k), the district court could exercise supplemental (sometimes called pendent)[13] jurisdiction over any future opt-in employees' claims. *See* 28 U.S.C. § 1367(a). Subject to exceptions not relevant here, section 1367 provides that once a district court has jurisdiction over a claim, it also has "supplemental jurisdiction over all other claims" that are sufficiently related to the claim over which the court has jurisdiction, including "claims that involve the joinder or intervention of additional parties." *Ervin*, 632

---

[13] "Today, the terms 'ancillary,' 'pendent,' and 'supplemental' are all used, essentially interchangeably." Charles Allen Wright & Arthur R. Miller, 13 Fed. Prac. & Proc. Juris. § 3523 (3d ed. 2023). This brief uses the "supplemental" term except when quoting a court decision that uses a different term.

F.3d at 979 (applying Section 1367(a) to state-law claims related to a FLSA collective action).

Section 1367 is usually invoked to supply supplemental *subject matter* jurisdiction, but its logic applies readily to *personal* jurisdiction as well. Indeed, this Court has already held as much: "the same logic that lies behind the supplemental jurisdiction statute for purposes of subject matter jurisdiction, 28 U.S.C. § 1367, supports the application of supplemental personal jurisdiction over claims that are properly before the court under § 1367." *Robinson Eng'g*, 223 F.3d at 450; *see also Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994) ("Having thus established jurisdiction over [the defendant] on that count, the court exercised jurisdiction over him on the remaining counts in accordance with the doctrine of pendent personal jurisdiction.").[14]

---

[14] Even supplemental *subject matter* jurisdiction does not require statutory authorization. For example, before Section 1367 was enacted, the Supreme Court recognized supplemental subject matter jurisdiction even without express statutory authorization. *E.g.*, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Hurn v. Oursler*, 289 U.S. 238, 244 (1933) (collecting cases). Courts recognize extra-statutory supplemental subject matter jurisdiction in a wide range of other contexts as well. *E.g.*, *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("[W]e have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments."); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994) (recognizing supplemental jurisdiction "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent"); *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 616 (1966) (supplemental jurisdiction over matters related to agency action); *Montano v. City of Chicago*, 375 F.3d 593, 599 (7th Cir. 2004) (supplemental appellate jurisdiction); *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997) ("nonstatutory ancillary jurisdiction" over party that may have derivative liability for plaintiff's claim).

Most other circuits also recognize supplemental personal jurisdiction. *E.g.*, *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004) ("[W]e join our sister circuits and adopt the doctrine of pendent personal jurisdiction. We note … that 'every circuit court of appeals to address the question [has] upheld the application of pendent personal jurisdiction.'" (second alteration in original) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)). Indeed, the Federal Rules Advisory Committee—appointed by the Supreme Court to draft and revise the federal rules—acknowledged that federal courts may exercise supplemental personal jurisdiction under Section 1367. *Amendments to the Federal Rules of Civil Procedure and Forms*, 146 F.R.D. 401, 572 (approved by the Supreme Court, Apr. 22, 1993).

It is true that the Sixth Circuit recently departed from the consensus view of this and other circuits, rejecting a similar supplemental personal jurisdiction argument. *Canaday*, 9 F.4th at 401. The Sixth Circuit thought the concept of supplemental personal jurisdiction was "hard to reconcile with *Bristol-Myers*." *Id.* But, as discussed in more detail *supra* at pp. 32–33, *Bristol-Myers* addresses the due process limits on *state* courts. Of course, supplemental personal jurisdiction will not allow a state court to exercise jurisdiction when a constitutional provision forbids it, but that is far from the situation here: there is no colorable constitutional bar to a federal court asserting jurisdiction over Signet. Respectfully, the Sixth Circuit's outlier opinion in *Canaday* offers no reason to depart from the settled law in this and other circuits. *See, e.g.*, *Robinson Eng'g*, 223 F.3d at 450.

46

Thus, even if the Court requires an additional Wisconsin-based personal jurisdiction analysis for the new claimants, supplemental personal jurisdiction offers an independent basis for affirming the district court.

## CONCLUSION

For the foregoing reasons, the decision of the district court should be affirmed.

Respectfully submitted,

Jennifer J. Zimmermann
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200
Madison, WI 53703
(608)256-3304
jjz@legalaction.org

Lorraine Gaynor
IOWA LEGAL AID
1700 S. 1st Avenue, Suite 10
Iowa City, IA, 52240
(319)351-6570, Ext.1512
lgaynor@iowalaw.org

*s/Joseph W. Mead*
Joseph W. Mead
Kelsi Brown Corkran
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
Georgetown Univ. Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
(202) 662-9765
jm3468@georgetown.edu

Edward J. Tuddenham
42 Ave. Bosque, Paris, France,
+33 6 84 79 89 30
edwardtuddenham@gmail.com

*Attorneys for Plaintiff-Appellee*

December 20, 2023

47

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a), including the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and Seventh Circuit Rule 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 12,781 words.

This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using 12-point Century Schoolbook Font.

*s/Joseph W. Mead*
Joseph W. Mead