No. 23-2964

# In the
# United States Court of Appeals
## for the Seventh Circuit

JOSE AGEO LUNA VANEGAS,

*Plaintiff-Appellee,*

v.

SIGNET BUILDERS, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin, No. 3:21-cv-00054-jdp..
The Honorable James D. Peterson, Chief District Court Judge Presiding.

# *AMICI CURIAE* BRIEF OF THE NATIONAL EMPLOYMENT LAWYERS ASSOCIATION AND WISCONSIN EMPLOYMENT LAWYERS ASSOCIATION IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE

JAMES A. WALCHESKE
DAVID M. POTTEIGER
WALCHESKE & LUZI, LLC
235 North Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Phone: (262) 780-1953

*Counsel for Amici Curiae*

COUNSEL PRESS · (866) 703-9373 PRINTED ON RECYCLED PAPER

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2964

Short Caption: Signet Builders, Inc. v. Jose Ageo Luna Vanegas, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
National Employment Lawyers Association and Wisconsin Employment Lawyers Association

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Walcheske & Luzi, LLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: /s/ James A. Walcheske Date: December 27, 2023

Attorney's Printed Name: James A. Walcheske

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 235 N. Executive Drive, Suite 240

Brookfield, WI 53005

Phone Number: (262) 780-1953 Fax Number: (262) 565-6469

E-Mail Address: jwalcheske@walcheskeluzi.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2964

Short Caption: Signet Builders, Inc. v. Jose Ageo Luna Vanegas, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
National Employment Lawyers Association and Wisconsin Employment Lawyers Association

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Walcheske & Luzi, LLC

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: /s/ David M. Potteiger Date: December 27, 2023

Attorney's Printed Name: David M. Potteiger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 235 N. Executive Drive, Suite 240
Brookfield, WI 53005

Phone Number: (262) 780-1953 Fax Number: (262) 565-6469

E-Mail Address: dpotteiger@walcheskeluzi.com

## TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ..... i

TABLE OF AUTHORITIES ..... iv

STATEMENT OF INTEREST ..... 1

ARGUMENT ..... 3

I. SIGNET'S NOVEL JURISDICTIONAL CHALLENGE FRUSTRATES BOTH THE FLSA'S BROAD REMEDIAL ENFORCEMENT SCHEME AND DECADES OF JURISPRUDENCE WITHIN THIS CIRCUIT ..... 3

II. SIGNET'S NOVEL JURISDICTIONAL CHALLENGE WILL HAVE A CHILLING EFFECT ON SUITS AIMED AT VINDICATING EMPLOYEE'S RIGHTS ..... 11

CONCLUSION ..... 18

## TABLE OF AUTHORITIES

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
368 F.3d 1174 (9th Cir. 2004) ....................9

*Alfred v. Pepperidge Farm Inc.*,
No. 14-CV-7086 (C.D. Calif., Oct. 10, 2019)....................12

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)....................17

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
450 U.S. 728 (1981)....................4

*Bigger v. Facebook, Inc.*,
947 F.3d 1043 (7th Cir. 2020) ....................6, 8

*Bone v. XTO Energy, Inc.*,
2021 WL 4307130 (D.N.M. Sept. 22, 2021)....................14

*Breitwieser v. KMS Indus., Inc.*,
467 F.2d 1391 (5th Cir. 1972) ....................4

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
582 U.S. 255 (2017)....................13

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ....................6

*Canaday v. Anthem Companies, Inc.*,
9 F.4th 392 (6th Cir. 2021) ....................5, 13

*Carter v. XPO Logistics Inc.*,
No. 16-CV-1231 (N.D. Calif., Oct. 18, 2019) ....................12

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018).................... 11-12

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770 (7th Cir. 2013) ....................8

*Garcia v. Peterson*,
319 F. Supp. 3d 863 (S.D. Tex. 2018)....................13

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013)....................7

*Gibbs v. MLK Express Servs., LLC*,
2019 WL 1980123 (M.D. Fla. Mar. 28, 2019) ....................13

*Grayson v. K Mart Corp.*,
79 F.3d 1086 (11th Cir. 1996) ....................8

*Halle v. W. Penn Allegheny Health Sys. Inc.*,
842 F.3d 215 (3d Cir. 2016) ....................7

*Hickman v. TL Transp., LLC*,
317 F. Supp. 3d 890 (E.D. Pa. 2018) ....................13

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989) ....................6, 7, 10

*Hollins v. Regency Corp.*,
867 F.3d 830 (7th Cir. 2017) ....................6

*Hunt v. Interactive Med. Specialists, Inc.*,
2019 WL 6528594 (N.D.W. Va. Dec. 4, 2019) ....................13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ....................16

*In re New Albertsons, Inc.*,
No. 21-2577, 2021 WL 4028428 (7th Cir. Sept. 1, 2021) .................... 6-7

*In re Packaged Seafood Prod. Antitrust Litig.*,
338 F. Supp. 3d 1118 (S.D. Cal. 2018) ....................14

*In Re Wackenhut Wage and Hour Cases*,
2010 WL 8696423 (Cal. Sup. Ct. Oct. 21, 2019) ....................12

*Ivery v. RMH Franchise Corp.*,
280 F. Supp. 3d 1121 (N.D. Ill. 2017) ....................7

*Lusardi v. Xerox Corp.*,
118 F.R.D. 351 (D.N.J. 1987) ....................6

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*,
679 F.2d 1350 (11th Cir. 1982) ....................11

*Martinez v. Tyson Foods, Inc.*,
533 F. Supp. 3d 386 (N.D. Tex. 2021) ....................14

*Mason v. Lumber Liquidators, Inc.*,
2019 WL 2088609 (E.D.N.Y. May 13, 2019) ....................13

*McNutt v. Swift Transp. Co. of Ariz., LLC*,
2020 WL 3819239 (W.D. Wash. July 7, 2020)....................14

*Merino v. Wells Fargo & Co.*,
No. 16-CV-7840 (D. N.J., July 9, 2019) ....................12

*Morris v. Transouth Fin. Corp.*,
175 F.R.D. 694 (M.D. Ala. 1997) ....................16

*Mussat v. IQVIA, Inc.*,
953 F.3d 441 (7th Cir. 2020) ....................1

*O'Connor v. Uber Technologies*,
No. 13-CV-3826 (N.D. Calif., Aug. 29, 2019)....................12

*O'Quinn v. TransCanada USA Servs., Inc.*,
469 F. Supp. 3d 591 (S.D.W. Va. 2020) ....................13

*Parker v. IAS Logistics DFW, LLC*,
2021 WL 4125106 (N.D. Ill. Sept. 9, 2021)....................14

*Pettenato v. Beacon Health Options, Inc.*,
425 F. Supp. 3d 264 (S.D.N.Y. 2019)....................13

*Prickett v. DeKalb Cnty.*,
349 F.3d 1294 (11th Cir. 2003) ....................5

*Rafferty v. Denny's, Inc.*,
2019 WL 2924998 (N.D. Ohio July 8, 2019) ....................13

*Roberts v. C.R. England Inc.*,
No. 12-CV-302 (D. Utah, July 9, 2019) ....................12

*Robinson Eng'g Co. Pension Plan & Tr. v. George*,
223 F.3d 445 (7th Cir. 2000) ....................9

*Sanchez v. McDonald's Restaurants of California Inc.*,
Calif. Super. Ct., No. BC499888 (Nov. 22, 2019) ....................12

*Seiffert v. Qwest Corp.*,
2018 WL 6590836 (D. Mont. Dec. 14, 2018) ....................13

*Skirchak v. Dynamics Rsch. Corp.*,
508 F.3d 49 (1st Cir. 2007) ....................4

*Sloan v. Gen. Motors LLC*,
287 F. Supp. 3d 840 (N.D. Cal. 2018) ....................9

*Smallwood v. Illinois Bell Tel. Co.*,
710 F. Supp. 2d 746 (N.D. Ill. 2010) ....................8

*Stone v. First Union Corp.*,
371 F.3d 1305 (11th Cir. 2004) ....................8

*Swales v. KLLM Transp. Servs., L.L.C.*,
985 F.3d 430 (5th Cir. 2021) ....................8

*Thomas v. Kellogg Co.*,
2017 WL 5256634 (W.D. Wash. Oct. 17, 2017) ....................13

*Turner v. Utiliquest, LLC*,
2019 WL 7461197 (M.D. Tenn. July 16, 2019) ....................13

*United States v. Botefuhr*,
309 F.3d 1263 (10th Cir. 2002) ....................9

*Vallone v. CJS Sols. Grp., LLC*,
9 F.4th 861 (8th Cir. 2021) ....................13

*Van Dusen v. Swift Transportation Co.*,
No. 10-CV-899 (D. Ariz., April 18, 2019) ....................12

*Warren v. MBI Energy Servs., Inc.*,
2020 WL 937420 (D. Colo. Feb. 25, 2020) ....................13

*Waters v. Day & Zimmermann NPS, Inc.*,
23 F.4th 84 (1st Cir. 2022) ....................13

*Woods v. Caremark*,
W.D. Mo., No. 14-CV-583 (W.D. Mo., May 31, 2019) ....................12

**Statutes and Other Authorities**

U.S. Const. amend. V ....................2

U.S. Const. amend. XIV ....................2

29 U.S.C. § 202(a) .......... 4

29 U.S.C. § 216(b) .......... 5

Fed. R. Civ. P. 4(e)(1) .......... 2

Fed. R. Civ. P. 4(h)(1) .......... 2

Keith William Diener, *Judicial Approval of FLSA Back Wages Settlement Agreements*, 35 Hofstra Lab. & Emp. L. J. 25, 34 (2017) .......... 12

Nantiya Ruan, *What's Left To Remedy Wage Theft? How Arbitration Mandates That Bar Class Actions Impact Low–Wage Workers*, 2012 Mich. St. L. Rev. 1103 (2012) .......... 15

Rosemary Sage Jones, *The FLSA Wage and Hour Epidemic*, 69 The Advoc. (Texas) 70 (2014) .......... 12

Scott A. Moss & Nantiya Ruan, *No Longer a Second-Class Class Action? Finding Common Ground in the Debate over Wage Collective Actions with Best Practices for Litigation and Adjudication*, 11 Fed. Cts. L. Rev. 27, 29 (2019) .......... 13

*Silent Workers, Disappearing Rights: Confidential Settlements and the Fair Labor Standards Act*, 34 Berkeley J. Emp. & Lab. L. 109, 114 (2013) .......... 4

Nicole Wredberg, *Subverting Workers' Rights: Class Action Waivers and the Arbitral Threat to the NLRA,* 67 Hastings L. J. 881, 887 (2016) .......... 11

**STATEMENT OF INTEREST**

The National Employment Lawyers Association ("NELA") is the largest professional membership organization in the country comprising lawyers who represent workers in labor, employment, and civil rights disputes. Founded in 1985, NELA advances employee rights and serves lawyers who advocate for equality and justice in the American workplace. NELA and its 69 circuit, state, and local affiliates, including the Wisconsin Employment Lawyers Association ("WELA"), have a membership of over 4,000 attorneys who are committed to working on behalf of those who have been illegally treated in the workplace. NELA's members litigate daily in every circuit, affording NELA a unique perspective on how the principles announced by the courts in employment cases actually play out on the ground. NELA strives to protect the rights of its members' clients, and regularly supports precedent-setting litigation affecting the rights of individuals in the workplace.

At issue in this appeal is whether approximately 600 non-resident employees of Defendant-Appellant, Signet Builders, Inc. ("Signet"), may exercise their statutory right to participate in a Fair Labor Standards Act ("FLSA") collective action commenced by Plaintiff-Appellee, Jose Ageo Luna Vanegas, in the United States District Court for the Western District of Wisconsin.

Following this Circuit's precedent in *Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020), the District Court held that Federal Rule of Civil Procedure 4(k) provides a

"territorial limit" on effective service of a summons but does not otherwise limit a federal district court's jurisdiction over a defendant once a summons has been served. (ECF No. 123, p. 5.) Thus, because Luna Vanegas' claims arose from Signet's contacts with the State of Wisconsin and because Luna Vanegas unquestionably served Signet pursuant to Rule 4(h)(1) vis-à-vis Rule 4(e)(1), the District Court maintains personal jurisdiction over Signet and can adjudicate not only Luna Vanegas' individual FLSA claims, but also the pendent claims of all other non-resident employees of Signet who "opt-in," without running afoul of either the FLSA or the Fifth Amendment's Due Process Clause.

Signet has filed this appeal seeking reversal, arguing that because it is not subject to general personal jurisdiction in the State of Wisconsin, the Fourteenth Amendment's Due Process Clause requires each potential non-resident "opt-in" to independently establish specific personal jurisdiction over Signet. If successful, Signet will not only evade the consequences of its alleged failure to properly compensate approximately 600 non-resident employees, but also Signet will significantly alter the FLSA collective action landscape for employment law practitioners, their clients, and those who stand to benefit from their efforts in this Circuit and across the nation.

Although *amici* have no financial interest in the outcome of this case, NELA and WELA are interested in ensuring the *status quo* for FLSA collective action practitioners and their clients in this Circuit. In that regard, this appeal raises issues of great importance that will have material financial consequences for millions of American workers in this

Circuit. Accordingly, *Amici* respectfully submit this brief to offer their informed view that this Court should affirm the decision below.

**ARGUMENT**

With the tacit approval of both this Court and the Supreme Court, district courts in this Circuit have – *for decades* – developed and consistently applied a procedural framework to Section 216(b) collective actions which harmonizes the FLSA's broad remedial enforcement scheme, the right of ***any employee*** to become a party plaintiff to ***any such action***, and a district court's procedural authority and managerial responsibilities. Indeed, this Circuit's Section 216(b) collective action framework remains an efficient and essential check on the most prevalent rights violations amongst employers of low-wage workers, *i.e.* wage theft.

Signet's novel jurisdictional challenge, if successful, would fundamentally alter the *status quo* in practical ways that would be devastating to American workers in this Circuit. Such an outcome abnegates the efficiencies, convenience, and uniformity of outcomes intended by Congress and would strip district courts in this Circuit of their inherent procedural authority and managerial responsibilities.

## I. SIGNET'S NOVEL JURISDICTIONAL CHALLENGE FRUSTRATES THE FLSA'S BROAD REMEDIAL ENFORCEMENT SCHEME AND CONFLICTS WITH DECADES OF JURISPRUDENCE WITHIN THIS CIRCUIT

Congress designed the FLSA to have a comprehensive remedial enforcement scheme with broad access to federal district courts. Over the course of decades, the district

courts in this Circuit developed a framework for Section 216(b) collective actions that is consistently applied and well-known to FLSA practitioners and litigants.

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Such "labor conditions [are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202(a).

In order to effectuate this purpose, Congress has called on "citizens to function as private attorneys general." *Skirchak v. Dynamics Rsch. Corp.*, 508 F.3d 49, 58 (1st Cir. 2007); *see also*, *Breitwieser v. KMS Indus., Inc.*, 467 F.2d 1391, 1396–97 (5th Cir. 1972) (dissent) ("suits for violations of the FLSA serve as a necessary or appropriate supplement in the nature of an action by a private attorney general to effectuate congressional policy"); Elizabeth Wilkins, *Silent Workers, Disappearing Rights: Confidential Settlements and the Fair Labor Standards Act*, 34 Berkeley J. Emp. & Lab. L. 109, 114 (2013) ("Individual plaintiffs in FLSA suits ... do not merely vindicate their own rights but also act as private attorneys general enforcing a public norm.")

As a result, Congress was careful to ensure that "the statutory enforcement scheme grant[ed] individual employees broad access to the courts." *Barrentine*, 450 U.S. at 740. Indeed, Section 216(b), the FLSA's principal enforcement mechanism, provides that "[a]n action to recover the liability prescribed … may be maintained against any employer …

in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Section 216(b) further unequivocally provides for "the right of ***any employee*** to become a party plaintiff to ***any such action***." *Id.* (emphasis added). It is clear that "by referring to them [read: similarly-situated employees] as 'party plaintiff[s]' Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003). It is also clear from the plain language of Section 216(b) that before party status may be conferred, an employee being must "give his consent in writing." *Prickett*, 349 F.3d at 1297.

However, the *only* limitation on an employee "becom[ing] a party plaintiff to any such action" is that he must "give his consent in writing to become such a party" and to assure that "such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). "No exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute." *Barrentine*, 450 U.S. at 740. Indeed, employees who "opt-in" are not required to file complaints and have "no additional service [of summons] obligations." *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 399–400 (6th Cir. 2021).

Because the FLSA "does not establish a process for evaluating the propriety of a collective proceeding as litigation unfolds," *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018), district courts play an essential role "in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought" in order to apprise them of the pendency of litigation so that they may choose to participate. *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 169 (1989). Accordingly, "much of collective action practice is a product of interstitial judicial lawmaking or *ad hoc* district court discretion." *Campbell*, 903 F.3d at 1100.

Common among district courts, including those in this Circuit, is "a two-stage procedure for determining whether individuals are 'similarly situated' to the named plaintiff(s)." *Bigger v. Facebook, Inc*., 947 F.3d 1043, n. 5 (7th Cir. 2020). This approach was first announced in *Lusardi v. Xerox Corp.,* 118 F.R.D. 351, 370 (D.N.J. 1987). Although this Circuit "ha[s] not required this two-stage approach," *Bigger,* 947 F.3d at n. 5, it has recognized that "the Supreme Court has endorsed this practice." *Hollins v. Regency Corp.,* 867 F.3d 830, 833 (7th Cir. 2017).

"At the first step ["conditional certification"], plaintiffs need only make a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *In re New Albertsons, Inc*., No.

21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021), *citing*, *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1132–33 (N.D. Ill. 2017).

"'Conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). "Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). The notice process is of paramount importance.

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.
>
> These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite ***procedural authority*** to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. It follows that, once an [FLSA] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.

*Sperling*, 493 U.S. at 170–71 (emphasis added).

"At the more stringent second step, after employees have opted in and discovery is complete, the court must reevaluate the conditional certification and determine

whether there is sufficient similarity between the named and opt-in plaintiffs." *Bigger*, 947 F.3d at n. 5, *citing Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). Recognizing that the "***only difference***" between a collective action under Section 216(b) and a class action under Rule 23 is that a collective action member must "opt-in" while a class action member must "opt-out," this Circuit has observed that "there isn't a good reason to have different standards for the certification of the two different types of action." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013).

This Circuit's approach, however, is not universally applied. The Eleventh Circuit has held that Congress "impliedly rejected the Rule 23 class action procedures," and evaluates Section 216(b) collective actions under a standard "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson v. K Mart Corp*., 79 F.3d 1086, 1095 (11th Cir. 1996); *see also, Stone v. First Union Corp.*, 371 F.3d 1305 (11th Cir. 2004) (applying permissive intervention under Rule 24(b)). The Fifth Circuit has eschewed the two-step approach altogether in favor of a more stringent evidentiary standard. *See, e.g., Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

Regardless of the differing nomenclature or variances among district courts in asserting "managerial responsibility" over Section 216(b) collective actions, implicit in FLSA jurisprudence is a district court's discretionary exercise of pendent party personal jurisdiction over non-resident "opt-in" employees.

> In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction.

*United States v. Botefuhr,* 309 F.3d 1263, 1272 (10th Cir. 2002); *see also, Robinson Eng'g Co. Pension Plan & Tr. v. George,* 223 F.3d 445, 449 (7th Cir. 2000); *Action Embroidery Corp. v. Atl. Embroidery, Inc.,* 368 F.3d 1174, 1181 (9th Cir. 2004) ("When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts.")

Indeed, the discretionary exercise of pendent party personal jurisdiction is fundamentally aligned with the broad remedial purpose of Section 216(b):

> Judicial economy is better served by having the claims of all plaintiffs heard in this Court where they involve similar legal issues and all arise out of a common nucleus of operative facts…. The alternative to hearing those claims in a single forum is to populate the dockets of up to fifty federal courts with nearly identical legal and factual issues. Additionally, there is an interest in avoiding piecemeal litigation…. Having the same question proceed in different courts creates the possibility of overlapping nationwide classes, inconsistent outcomes, and an obvious waste of judicial resources. Finally, the overall convenience of the parties – including Defendant's – is much better served by having the claims heard in a single forum rather than fifty.

*Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 863 (N.D. Cal. 2018).

Perhaps for these reasons, any differences in collective action practice resulting from judicial lawmaking or *ad hoc* district court discretion have heretofore been procedural - *not jurisdictional.* The focus, instead, has been balancing "the right of ***any***

***employee*** to become a party plaintiff to ***any such action***," 29 U.S.C. § 216(b), with the district court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Sperling*, 493 U.S. at 170–71.

Congress designed the FLSA to have a comprehensive remedial enforcement scheme with broad access to district courts. Section 216(b) unequivocally provides for the "right of ***any employee*** to become a party plaintiff to ***any such action***," and for decades the district courts in this Circuit have consistently applied a two-step approach to Section 216(b) collective actions that is well known to FLSA practitioners and litigants.

As shown below, Signet's appeal seeks to upend the decades-long *status quo*, eviscerate the rights of ***any employee*** to join ***any action***, and sow confusion among practitioners and their clients. Such an outcome abnegates the efficiencies, convenience, and uniformity of outcomes intended by Congress and would strip district courts in this Circuit of their requisite procedural authority and managerial responsibilities. As set forth in Luna Vanegas' principal brief, there is no basis in law for such an outcome. Rather, the opposite is true. Accordingly, the district court's opinion and order should be affirmed.

## II. SIGNET'S NOVEL JURISDICTIONAL CHALLENGE WILL HAVE A CHILLING EFFECT ON SUITS AIMED AT VINDICATING EMPLOYEE'S RIGHTS

As described above, one cannot ignore the fact that if Signet prevails in this appeal, it will disrupt the *status quo* and fundamentally alter the Section 216(b) collective action landscape, in this Circuit and elsewhere, the extent of which could not have been contemplated by Congress when it enacted or subsequently amended the FLSA. This Circuit must therefore confront the practical reality that there are often significant inequalities in power between employers and employees, *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350 (11th Cir. 1982), and that those inequalities will be magnified if the Section 216(b) collective action mechanism is eroded.

"Evidence indicates that wage and hour violations tend to be the most prevalent rights violations amongst employers of low-wage workers." Nicole Wredberg, *Subverting Workers' Rights: Class Action Waivers and the Arbitral Threat to the NLRA,* 67 Hastings L. J. 881, 887 (2016). Indeed, "in 2009, a survey of 4,387 low-wage workers across a variety of industries working for large and small companies within three major U.S. cities found that seventy-six percent of full-time workers faced unpaid or underpaid overtime and twenty-six percent reported being paid less than minimum wage." *Id.*

Collective and class action procedures "have been the only way through which workers have been able to significantly address wage violations." *Id.* at 888; *see also, Epic*

*Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1633 (2018) (dissent) ("By joining together with others similarly circumstanced, employees can gain effective redress for wage underpayment commonly experienced.")

For example, in 2019, the Wage and Hour Division of the United States Department of Labor assessed FLSA back wages in the amount of $226,998,396.00.[1] By comparison, in 2019 the ten largest class and collective action wage settlements alone nearly doubled that amount at over $449,000,000.00.[2]

Given the prevalence of wage violations and the efficacy of collective actions to compensate employees for unpaid wages, beginning in the 1990s federal courts "saw a substantial uptick in the number of FLSA claims filed," and that trend continued into the 21st century. Keith William Diener, *Judicial Approval of FLSA Back Wages Settlement Agreements*, 35 Hofstra Lab. & Emp. L. J. 25, 34 (2017); Rosemary Sage Jones, *The FLSA Wage and Hour Epidemic*, 69 The Advoc. (Texas) 70 (2014). In 2000, there were 1,935 FLSA cases filed in federal court. *Id.* By 2012, the number rose to 8,152 cases. *Id.* "Once a backwater topic compared to the Rule 23 class action, . . . FLSA litigation grew over 500%

[1] https://www.dol.gov/agencies/whd/data/charts/fair-labor-standards-act

[2] *See In Re Wackenhut Wage and Hour Cases*, 2010WL8696423 (Cal. Sup. Ct. Oct. 21, 2019); *Van Dusen v. Swift Transportation Co.*, No. 10-CV-899 (D. Ariz., April 18, 2019); *Roberts v. C.R. England Inc.*, No. 12-CV-302 (D. Utah, July 9, 2019); *Merino v. Wells Fargo & Co.*, No. 16-CV-7840 (D. N.J., July 9, 2019); *Sanchez v. McDonald's Restaurants of California Inc.*, Calif. Super. Ct., No. BC499888 (Nov. 22, 2019); *Alfred v. Pepperidge Farm Inc.*, No. 14-CV-7086 (C.D. Calif., Oct. 10, 2019); *O'Connor v. Uber Technologies*, No. 13-CV-3826 (N.D. Calif., Aug. 29, 2019); *Carter v. XPO Logistics Inc.*, No. 16-CV-1231 (N.D. Calif., Oct. 18, 2019); and *Woods v. Caremark*, W.D. Mo., No. 14-CV-583 (W.D. Mo., May 31, 2019).

from 1994 to 2014." Scott A. Moss & Nantiya Ruan, *No Longer a Second-Class Class Action? Finding Common Ground in the Debate over Wage Collective Actions with Best Practices for Litigation and Adjudication*, 11 Fed. Cts. L. Rev. 27, 29 (2019). Between 2014 and 2017, there were 41,118 FLSA cases filed in federal district courts.[3]

Despite the increasing number of FLSA claims filed in federal court, including a significant rise in Section 216(b) collective actions, *Amici* are not aware of a single challenge to a federal district court's exercise of personal jurisdiction over the claims of non-resident employees who "opted-into" an existing FLSA action prior to *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty*., 582 U.S. 255 (2017).

In *Bristol-Myers Squibb,* the Supreme Court noted that its decision was nothing more than a "***straightforward application … of settled principles of personal jurisdiction***." *Id.* at 269 (emphasis added). Ironic, then, that *Bristol-Myers Squibb* would generate a plethora of litigation between 2017 and 2023[4] by employer-defendants

---

[3] Federal Judicial Caseload Statistics, www.pacer.gov (2013-2017).

[4] *See, generally, Waters v. Day & Zimmermann NPS, Inc*., 23 F.4th 84 (1st Cir. 2022); *Vallone v. CJS Sols. Grp., LLC,* 9 F.4th 861 (8th Cir. 2021); *Canaday v. Anthem Cos*., 9 F.4th 392 (6th Cir. 2021); *Warren v. MBI Energy Servs., Inc*., 2020 WL 937420 (D. Colo. Feb. 25, 2020); *Gibbs v. MLK Express Servs., LLC,* 2019 WL 1980123 (M.D. Fla. Mar. 28, 2019); *Aiuto v. Publix Super Mkts., Inc*., 2020 WL 2039946 (N.D. Ga. Apr. 9, 2020); *Mason v. Lumber Liquidators, Inc.,* 2019 WL 2088609 (E.D.N.Y. May 13, 2019); *O'Quinn v. TransCanada USA Servs., Inc*., 469 F. Supp. 3d 591 (S.D.W. Va. 2020); *Hunt v. Interactive Med. Specialists, Inc.,* 2019 WL 6528594 (N.D.W. Va. Dec. 4, 2019); *Garcia v. Peterson,* 319 F. Supp. 3d 863 (S.D. Tex. 2018); *Seiffert v. Qwest Corp*., 2018 WL 6590836 (D. Mont. Dec. 14, 2018); *Thomas v. Kellogg Co*., 2017 WL 5256634 (W.D. Wash. Oct. 17, 2017); *Pettenato v. Beacon Health Options, Inc.,* 425 F. Supp. 3d 264 (S.D.N.Y. 2019); *Hickman v. TL Transp., LLC,* 317 F. Supp. 3d 890 (E.D. Pa. 2018); *Rafferty v. Denny's, Inc.,* 2019 WL 2924998 (N.D. Ohio July 8, 2019); *Turner v. Utiliquest, LLC,* 2019 WL 7461197 (M.D. Tenn. July 16, 2019); *Vallone v. CJS Sols. Grp., LLC,* 437 F.

asserting novel jurisdictional challenges that are nothing more than veiled attempts to deprive vulnerable low-income litigants access to federal district courts.

For any of the myriad of reasons discussed in Luna Vanegas' principal brief, *Bristol-Myers Squibb* does not act as a jurisdictional bar to the claims of non-resident employees who may elect to "opt-into" a Section 216(b) collective action commenced in federal district court. If for no other reason, "where a federal court sits in federal question jurisdiction, the due process concerns are different than those animating *Bristol-Myers* and a court would not apply *Bristol-Myers* when sitting in federal question jurisdiction." *In re Packaged Seafood Prod. Antitrust Litig*., 338 F. Supp. 3d 1118, 1172 (S.D. Cal. 2018).

But, consider the following hypothetical. Signet, who is "at home" in Texas, employs approximately 600 employees nationwide but only about 30 hourly-paid, non-exempt workers in Wisconsin. Employees, like Luna Vanegas, are paid just $13.25 per hour, *ECF No. 108,* and receive no overtime premium compensation for hours worked over 40 in a workweek. A former employee, like Luna Vanegas, who lived and worked in Wisconsin would like to bring suit against Signet for its failure to pay his overtime and the overtime compensation of his co-workers. However, assume his individual claim is valued at just $530.00. While $530.00 may seem a modest amount, to a low-income

---

Supp. 3d 687 (D. Minn. 2020); *McNutt v. Swift Transp. Co. of Ariz., LLC,* 2020 WL 3819239 (W.D. Wash. July 7, 2020); *Martinez v. Tyson Foods, Inc.*, 533 F. Supp. 3d 386 (N.D. Tex. 2021); *Parker v. IAS Logistics DFW, LLC*, 2021 WL 4125106 (N.D. Ill. Sept. 9, 2021); *Bone v. XTO Energy, Inc.*, 2021 WL 4307130 (D.N.M. Sept. 22, 2021).

worker, $530.00 is the equivalent of two (2) weeks' wages. Recovery of $530.00 may be the difference between paying rent or not paying rent.

If Signet's appeal is successful, an employee could bring an individual FLSA action in a federal district court sitting in the State of Wisconsin. Of course, while of personal significance, his claim may be "scarcely of a size warranting the expense of seeking redress alone." Nantiya Ruan, *What's Left To Remedy Wage Theft? How Arbitration Mandates That Bar Class Actions Impact Low–Wage Workers*, 2012 Mich. St. L. Rev. 1103, 1118–1119 (2012). Moreover, Signet would hardly be motivated to change its pay practices or compensate other similarly-situated employees' back pay or liquidated damages due under the FLSA.

To elicit the greatest potential benefit, the employee could attempt to bring a nationwide collective against Signet, but if Signet prevails in this appeal, such a case could only be brought in a federal court sitting in the State of Texas. However, bringing a collective action in the State of Texas would expose an already disadvantaged employee to significant and unnecessary risks.

First, based on *Amici's* experience litigants, particularly unsophisticated litigants, face impediments in their effort to obtain adequate representation. These difficulties are enhanced when seeking representation in an unfamiliar jurisdiction where individuals have little to no exposure to reliable referral sources. Moreover, an in-person consultation would be impractical. Among the inherent dangers these challenges pose is a finding of

inadequacy of representation jeopardizing the success of any Section 216(b) collective action. *See e.g. In re Cendant Corp. Litig*., 264 F.3d 201, 276 (3d Cir. 2001) (manner in which the named plaintiff chose counsel was a factor in demonstrating whether named plaintiff could fairly and adequately represent the interests of the class).

Second, there is no guarantee that a Section 216(b) collective would be certified. If attempts to certify the collective fail, then the action would be reduced to the named plaintiff's individual claim. It is axiomatic that if an FLSA claim of modest value is cost prohibitive for a low-income worker in his home state, *supra,* then it is exponentially so when forced to litigate the same modest claim thousands of miles from home as a repercussion for attempting to benefit other employees that may have been similarly damaged.

Last, even if a Section 216(b) collective action is certified, the increased cost and expense of prosecuting FLSA litigation in a foreign jurisdiction may nevertheless be too onerous to a low-income worker. Attending a "local" deposition thousands of miles away may, in and of itself, exceed the value of a named plaintiff's claim five-fold. With no assurance of ultimate success on the merits, the named plaintiff may succumb to the pressure of putting his own financial interests over that of the collective in a forced settlement, or, worse, abandoning litigation altogether. Although not dispositive, a class representative's financial state is a relevant inquiry to their adequacy of representation. *Morris v. Transouth Fin. Corp.,* 175 F.R.D. 694, 699 (M.D. Ala. 1997).

Moreover, even when adequacy of representation does not defeat certification, financial considerations may create conflicts of interest between the named plaintiff and members of the collective at later stages of the litigation and can even threaten approval of proposed settlements. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (class action settlement failed when "generous immediate payments" to class representatives created conflict of interest between class representative and settlement class members.)

Finally, given the divergence among circuits in implementing Section 216(b) collective action procedures, Signet's position on appeal will likely result in forum shopping. Large nationwide employers will be incentivized to incorporate or relocate their corporate headquarters in those circuits that require heightened proof or are otherwise historically "less friendly" to workers, adding to the already existing imbalance of power between employers and employees. What is more, large nationwide employers may even avoid employing hourly-paid, non-exempt workforces where they are "at home" to prevent low-income employees from bringing nationwide Section 216(b) collective actions.

Litigants, like Signet, strain to fit a *Bristol-Myers Squibb*-shaped peg in a 216(b) collective action-shaped hole, with full knowledge of the reality that, if successful, the primary mechanism for enforcing wage violations will be eviscerated, *i.e.* becoming so risky to and onerous on employees that wage theft will largely go unchecked. Such an outcome is fundamentally at odds with the broad remedial purpose of the FLSA and

decades of precedent in this Circuit. Accordingly, the district court's opinion and order should be affirmed.

## CONCLUSION

For the aforementioned reasons, *Amici,* NELA and its affiliate, WELA, respectfully request AFFIRMANCE in favor of Plaintiff-Appellee, Jose Ageo Luna Vanegas.

Dated this 27th day of December, 2023.

WALCHESKE & LUZI, LLC
Counsel for *Amici Curiae*

s/ *James A. Walcheske*
James A. Walcheske, SBN 1065635
David M. Potteiger, SBN 1067009

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
E-mail: jwalcheske@walcheskeluzi.com
E-mail: dpotteiger@walcheskeluzi.com

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Amicus Brief complies with Fed. R. App. P. 29(c) and the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,517 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2010 in 12-point Palatino Linotype font.

Dated: December 27, 2023

*/s/ James A. Walcheske*
James A. Walcheske
Attorney for *Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2023, was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *James A. Walcheske*
James A. Walcheske