RECORD NO. 23-2964

In The

# United States Court of Appeals For The Seventh Circuit

**SIGNET BUILDERS, INC.,**

*Appellant-Defendant,*

**v.**

**JOSE AGEO LUNA VANEGAS, on behalf of himself and other similarly situated,**

*Appellee-Plaintiff.*

From the United States District Court for the Western District of Wisconsin, Case No. 3:21-cv-00054-jdp

---

## REPLY BRIEF OF APPELLANT

---

Bradley W. Snead
Raffi Melkonian
Rachel Buchhorn Willroth
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (Fax)
snead@wrightclosebarger.com
melkonian@wrightclosebarger.com
willroth@wrightclosebarger.com

Daniel D. Pipitone
MUNSCH HARDT KOPF & HARR, P.C.
700 Milam Street, Suite 800
Houston, Texas 77002
(713) 222-4060
dpipitone@munsch.com

*Counsel for Appellant-Defendant Signet Builders, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ 2

INDEX OF AUTHORITIES ........................................................... 3

INTRODUCTION ..................................................................... 6

ARGUMENT .......................................................................... 8

I. The Court rightly accepted—and should resolve—this interlocutory appeal. ................................................... 8

II. This Court should follow its sister circuits in applying *Bristol-Myers* to FLSA collective actions. ..................................... 9

    A. Rule 4(k)(1)(A) limits personal jurisdiction consistent with the state's long-arm statute and the Fourteenth Amendment. ...................................................... 11

        1. Luna Vanegas ignores the limitations on personal jurisdiction incorporated by Rule 4(k). ..................... 11

        2. Luna Vanegas attempts to rewrite the text of Rule 4(k) under the guise of strict construction. ................ 13

    B. *Mussat v. IQVIA* addressed only Rule 23 class actions— not FLSA collective actions. ............................... 15

        1. Luna Vanegas conceals the differences between class actions and his proposed FLSA collective action. ...................................................... 16

        2. Other circuits have already rejected Luna Vanegas's attempts to treat all aggregate litigation alike. .......... 16

III. Supplemental personal jurisdiction does not save the claims of prospective out-of-state opt-in plaintiffs. ..................... 19

IV. The "parade of horribles" arguments fall short. .................. 22

CONCLUSION AND PRAYER ..................................................... 25

CERTIFICATE OF COMPLIANCE ................................................ 26

CERTIFICATE OF SERVICE ...................................................... 27

# INDEX OF AUTHORITIES

## Cases

*Abelesz v. OTP Bank*,
  692 F.3d 638 (7th Cir. 2012) ..................................................................... 11

*Bigger v. Facebook, Inc.*,
  947 F.3d 1043 (7th Cir. 2020)* ............................................................... 8, 18

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  582 U.S. 255 (2017) ...................................................................... passim

*Canaday v. Anthem Cos., Inc.*,
  9 F.4th 392 (6th Cir. 2021)......................................................... passim

*Carter v. Ford Motor Co.*,
  No. 19-62646-CIV, 2021 WL 1165248 (S.D. Fla. Mar. 26, 2021).......................... 22

*Clark v. A&L Homecare & Training Ctr., LLC*,
  68 F.4th 1003 (6th Cir. 2023).................................................................... 8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ......................................................................... 12, 14

*Demaria v. Nissan N. Am., Inc.*,
  No. 15 C, 3321, 2016 WL 374145 (N.D. Ill. Feb. 1, 2016)...................................... 21

*Espenscheid v. DirectSat USA, LLC*,
  *(Espenscheid I)*, 688 F.3d 872 (7th Cir. 2012) ........................................ 17

*Espenscheid v. DirectSat USA, LLC*,
  *(Espenscheid II)*, 705 F.3d 770 (7th Cir. 2013)........................................ 17

*Fischer v. Fed. Express Corp.*,
  42 F.4th 366 (3d Cir. 2022) ............................................................... 6, 12

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013) ........................................................................ 16, 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ....................................................................... 14, 24

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989) .................................................................. 8, 17, 18

3

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ............................................................... 14, 15

*Lyngaas v. Curaden Ag,*
  992 F.3d 412 (6th Cir. 2021) ................................................. 17

*Muir v. Nature's Bounty (DE), Inc.,*
  No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) ................... 13

*Murphy Bros. v. Michetti Pipe Stringing, Inc.,*
  526 U.S. 344 (1999) ............................................................... 15

*Mussat v. IQVIA, Inc.,*
  953 F.3d 441 (7th Cir. 2020) ........................................... 15, 16, 18

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,*
  484 U.S. 97 (1987) ............................................................ 11, 23

*Prickett v. DeKalb Cnty.,*
  349 F.3d 1294 (11th Cir. 2003) .............................................. 18

*Pyle-National Co. v. Amos,*
  172 F.2d 425 (7th Cir. 1949) ................................................. 8

*Rice v. Nova Biomedical Corp.,*
  38 F.3d 909 (7th Cir. 1994) .............................................. 20, 21

*Robinson Engineering Co. Pension Plan & Trust v. George,*
  223 F.3d 445 (7th Cir. 2000) ............................................. 20, 21

*Smith v. Pro. Transportation,*
  *Inc.,* 5 F.4th 700 (7th Cir. 2021) .......................................... 16

*Tamburo v. Dworkin,*
  601 F.3d 693 (7th Cir. 2010) ................................................ 12

*United Mine Workers of Am. v. Gibbs,*
  383 U.S. 715 (1966) ........................................................... 20

*Vallone v. CJS Sols.Grp., LLC,*
  9 F.4th 861 (8th Cir. 2021) ............................................ 6, 9, 10

*Walden v. Fiore,*
  571 U.S. 277 (2014) ....................................................... 12, 14

*Waters v. Day & Zimmermann NPS, Inc.,*
  23 F.4th 84 (1st Cir. 2022) ............................................... 6, 14

*Woods v. New York Life Insurance Co.,*
  686 F.2d 578 (7th Cir. 1982) ................................................................ 18

**Statutes**

15 U.S.C. § 5 ........................................................................................... 23

28 U.S.C. § 1367 ............................................................................... 19, 20

29 U.S.C. § 216(b) ....................................................................... 18, 19, 22

9 U.S.C. § 9 ............................................................................................. 23

**Rules**

Fed. R. Civ. P. 23(a) .......................................................................... 18, 24

**Other Authorities**

13D, Charles A. Wright, Arthur R. Miller & Richard D. Freer, *Federal
  Practice and Procedure* § 3567 (3d ed. 2019) .................................... 19

4 Charles A. Wright, Arthur Miller & Adam N. Steinman, *Federal Practice
  and Procedure* § 1068.1 (4th ed. 2021) ................................................ 7

4A Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal
  Practice and Procedure* § 1069.7 (4th ed. 2021) ................................ 21

Louis J. Capozzi III, *Relationship Problems: Pendent Personal Jurisdiction
  after Bristol-Myers Squib*b, 11 Drexel L. Rev. 215 (2018) ................... 12

Scott Dodson, *Personal Jurisdiction and Aggregati*on,
  113 Nw. U.L. Rev. 1 (2018) ................................................................ 22

## INTRODUCTION

Since the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017), federal circuit courts have repeatedly held that the decision applies to FLSA collective actions. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 1001 (2023); *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021). *But see Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022), *cert. denied*, 142 S. Ct. 2777 (2022) (2-1 panel decision with Barron, C.J., dissenting). The Court should join the consensus.

Appellee Jose Ageo Luna Vanegas could have brought his FLSA claim against his former employer, Appellant Signet Builders, Inc., in multiple venues. Had Luna Vanegas chosen Texas, he would have avoided the *Bristol-Myers* issue altogether because Signet is subject to general personal jurisdiction in Texas. Signet runs its day-to-day administrative operations in Texas. And for three decades it has provided construction services across the United States, some of which involve management of temporary workers as part of the H-2A temporary agricultural labor program.[1]

---

[1] There is a subtle undercurrent in the briefing by Luna Vanegas and his amici—which was more explicit in the prior appeal—that Signet is using the H-2A program to exploit labor. *See, e.g.*, Appellee's Br. at 5–6; Amicus Br. of Centro De Los Derechos Del Migrante, at 9–10, No. 21-2644 (7th Cir. Dec. 7, 2021). That is obviously beyond the bounds of this appeal. But, as Luna Vanegas conceded in his complaint, Signet has constantly operated its program under Department of Labor approval. *See* Am. Compl. ¶¶ 9, 16–35. And the reality is that Signet has a deep sense of care and responsibility for its people, promoting some workers beyond H-2A compensation levels and helping some obtain citizenship.

Luna Vanegas was one of Signet's H-2A temporary workers and worked on projects in Wisconsin. As a result, Wisconsin was also an option in which Luna Vanegas could bring suit. Yet, by choosing Wisconsin, Luna Vanegas limited the claims that could be added because Signet is subject to only specific personal jurisdiction in Wisconsin. That is, the Western District of Wisconsin may be an acceptable venue for Luna Vanegas's individual claim. But by seeking conditional certification for a collective action including over 500 employees who are ***not*** located in Wisconsin, Luna Vanegas runs headlong into *Bristol-Myers*.

Luna Vanegas's response raises predictable arguments: he claims that *Bristol-Myers* applies only to state courts and that the Seventh Circuit has its own caselaw requiring a different outcome. But none of Luna Vanegas's arguments support the far-reaching holding he seeks, which, if adopted, would allow a single in-state plaintiff to file an anchor claim and permit any number of unrelated or out-of-state claims to follow. An inspection of FLSA collective actions and *how* federal courts obtain personal jurisdiction over defendants (as well as some of amici's own writings[2]) reveals that *Bristol-Myers*' limits can and must apply to federal courts. The Court should vacate and reverse the district court's order granting Luna Vanegas's motion for conditional certification.

---

[2]   *See* 4 Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1068.1 (4th ed. 2021) ("[T]he Court in *Omni Capital* determined that the jurisdiction of a federal court, even in federal question cases, in the absence of a statutory provision for service, was limited by the forum state's long-arm statute as a result of the incorporation of that methodology by former Rule 4(e).").

## ARGUMENT

**I.    The Court rightly accepted—and should resolve—this interlocutory appeal.**

Luna Vanegas first contends that the Court "should dismiss this permissive interlocutory appeal as improvidently accepted" because no non-Wisconsin worker has consented to join the suit, "so Signet's jurisdictional challenge is currently hypothetical and abstract." Appellee's Br. at 11–12. That argument belies common sense and binding caselaw. To start, dismissing an appeal as improvidently granted after it has been fully briefed wastes the time of not only the parties but this Court.

As Signet previously explained, this Court has recognized that jurisdictional eligibility of opt-in plaintiffs in FSLA collective actions should be decided at the conditional certification stage to avoid the improper court-facilitated solicitation of claims. *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049–50 (7th Cir. 2020*); accord Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023).[3]

That recognition adheres to the Supreme Court's mandate in *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), that a court's facilitation of notice must not "in form and function" resemble "the solicitation of claims." *Id.* at 174. But "notice sent to employees who are not, in fact, eligible to join the suit amounts to solicitation of those employees to bring suits of their own." *Clark*, 68 F.4th at 1010. That is what would happen here if Signet's jurisdictional challenge is not resolved.

---

[3]    Luna Vanegas cites *Pyle-National Co. v. Amos*, 172 F.2d 425, 428 (7th Cir. 1949), in support of his argument, but *Amos* is irrelevant. *Amos* involved a petition in intervention that was (improperly) denied after the entry of judgment—a far cry from an FSLA collective action where notice may be sent to prospective out-of-state opt-in plaintiffs who are, in fact, ineligible to join the action.

8

Luna Vanegas adds that, even if Signet prevails, his case will proceed as an individual and collective FLSA action for any Wisconsin opt-ins, and he may seek certification of a nationwide class action for his non-FLSA claims. So, his argument goes, reviewing Signet's challenge now is delaying the ultimate resolution of the case. But as the district court recognized in certifying its order for interlocutory appeal, resolution of this case is only expedited by resolving Signet's jurisdictional challenge. *See* A-144–45 (explaining, *inter alia*, "immediate appeal will materially advance the ultimate resolution of this litigation by resolving uncertainty about the proper scope of the collective as it proceeds to the opt-in period, discovery, and summary judgment"). Answering a legal question before sending notice to hundreds of people who cannot in fact opt-in to an action no doubt saves time and money—on top of complying with Supreme Court precedent.

## II.   This Court should follow its sister circuits in applying *Bristol-Myers* to FLSA collective actions.

*Bristol-Myers* clarified that, when litigants aggregate claims, courts must engage in a claim-by-claim analysis of specific personal jurisdiction. *See* 582 U.S. at 264–66. The Third, Sixth, and Eighth Circuits each applied *Bristol-Myers* when analyzing specific personal jurisdiction in the context of FLSA collective actions on a claim-by-claim basis. Indeed, as the Sixth Circuit observed in *Canaday*—and the Third Circuit quoted in *Fisher*—"[t]aken together, the claims [of out-of-state plaintiffs] look just like the claims in *Bristol-Myers*." *Canaday*, 9 F.4th at 397.[4]

---

[4]   Luna Vanegas contends that the Eighth Circuit has not sided with the Sixth and Third Circuits because "the key issues relevant to this appeal were uncontested before the Eighth Circuit[.]" Appellee's Br. at 3 n.1. But in *Vallone*, two employees "assert[ed] that

Luna Vanegas makes two primary arguments against applying *Bristol-Myers*. First, he contends that Rule 4(k), which broadly governs federal summonses, is a trigger for nationwide jurisdiction: once a summons is served under Rule 4(k) from one plaintiff, the district court has specific jurisdiction over the defendant for any claims by any other plaintiff, up to the vague bounds of the Fifth Amendment. And, his argument goes, because *Bristol-Myers* addressed due process limits of the Fourteenth Amendment, not the Fifth Amendment, it has no relevance in this case. But Luna Vanegas's argument relies on a fundamental misunderstanding of Rule 4(k), specific personal jurisdiction, and controlling precedent from this Court and the Supreme Court.

Second, Luna Vanegas argues that the Seventh Circuit "has already recognized that *Bristol-Myers* does not limit district courts' power to exercise personal jurisdiction in representative actions." Appellee's Br. at 31–32. The argument wrongly equates Rule 23 class actions to FLSA collective actions. Rule 23 class actions stand alone as an exception to *Bristol-Myers*, which otherwise applies to aggregate litigation and mass torts.

Signet addresses each argument in greater detail below.

---

because the court had personal jurisdiction over one set of claims that arose based on travel to Minnesota, the court could exercise jurisdiction over *all* travel-time claims against HCI." 9 F.4th at 865. The Eighth Circuit disagreed, explaining that because the FLSA did not provide for nationwide service of process, it looked to the forum state's long-arm statute, and because the employer (HCI) was subject only to specific personal jurisdiction, the court needed to analyze, claim-by-claim, whether personal jurisdiction existed over the employer. *Id.* The issues were hardly "uncontested."

### A. Rule 4(k)(1)(A) limits personal jurisdiction consistent with the state's long-arm statute and the Fourteenth Amendment.

Starting with what the parties (and seemingly everyone) agree on: Rule 4(k) plays some role in this lawsuit because the FLSA is silent on service of process. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). The parties disagree, however, on exactly how Rule 4(k) applies. In Luna Vanegas's telling, Rule 4(k) is an on-off switch for nationwide specific jurisdiction. But that novel claim clashes directly with both the text of the rule and the foundational cases setting forth the law of personal jurisdiction.

### 1. Luna Vanegas ignores the limitations on personal jurisdiction incorporated by Rule 4(k).

Luna Vanegas contends that "Rule 4(k) applies only to service of the summons, and not subsequent developments in the case." Appellee's Br. at 14. At that point, he says, the district court maintains jurisdiction over any U.S. resident, up to the bounds of the Fifth Amendment (which in Luna Vanegas's view appears to have no bounds at all).[5] Thus, according to Luna Vanegas, because he initially established specific personal jurisdiction over Signet in Wisconsin for his claims, the Wisconsin federal district court has personal jurisdiction over Signet for *all* FLSA claims of out-of-state opt-in plaintiffs (and presumably any other claim or party he wishes to add).

---

[5]    In support, Luna Vanegas relies on cases interpreting subsections of Rule 4(k) not at issue here, like *Abelesz v. OTP Bank*, 692 F.3d 638, 660 (7th Cir. 2012) (applying Rule 4(k)(2)).

Lunas Vanegas couches his position as a textual argument. But the plain text of Rule 4(k)(1)(A) provides that service of summons establishes personal jurisdiction over a defendant "who is subject to the jurisdiction" of the forum state's courts.

Stated another way, the summons confers jurisdiction; but it is not what creates or defines the scope of that conferred jurisdiction. For that, Rule 4(k)(1)(A) points to the forum state and thus constrains jurisdiction thereto.[6] And if there were any doubt, the law of this Circuit and the Supreme Court is unequivocal: "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) ("Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state.").

The Third Circuit put it this way:

> The reason federal courts are limited by the Fourteenth Amendment in such cases is not because a federal court exercising broader personal jurisdiction would violate the Constitution, but because Rule 4(k)(1)(A) does not authorize jurisdiction broader than what would be permissible for a state.

*Fischer*, 42 F.4th at 383. And the fact that Rule 4(k)(1)(A) requires consideration of the due process limits of the Fourteenth Amendment is precisely why *Bristol-Myers*

---

[6]  Legal scholars have observed that the service of process rules were historically understood to constrain federal court jurisdiction. *See* Louis J. Capozzi III, *Relationship Problems: Pendent Personal Jurisdiction after Bristol-Myers Squibb*, 11 DREXEL L. REV. 215, 249–50 & n.152 (2018) ("Starting in the Judiciary Act of 1789, Congress established service of process scope rules as separate constraints on assertions of jurisdiction by the lower federal courts.").

applies to FLSA collective actions and other aggregate litigation. As one district court in this circuit stated, in the context of aggregate litigation, *Bristol-Myers* imposes an "indirect" bar on federal courts exercising personal jurisdiction over later-added non-resident plaintiffs. *Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *4 (N.D. Ill. Aug. 1, 2018).

Here, there is little dispute that, under the Wisconsin Long-Arm Statute, the district court would lack specific jurisdiction over nonresident FLSA opt-in plaintiffs.[7] So the Western District of Wisconsin likewise does not have specific personal jurisdiction over Signet for the claims of prospective out-of-state opt-in plaintiffs. That should not be a surprising result. If Luna Vanegas had filed in Wisconsin state court (as the express text of the FLSA authorized him to do), there is no dispute that his attempt to join hundreds of employees with no connection to Wisconsin would flout basic tenets of personal jurisdiction and *Bristol-Myers*.

### 2. Luna Vanegas attempts to rewrite the text of Rule 4(k) under the guise of strict construction.

Turning again to Luna Vanegas' textual argument, if the Supreme Court had intended Rule 4(k) to constrain federal district court jurisdiction only to the point of summons, and thereafter to the extent of the Fifth Amendment, would it not have said so, either in the text of the Rule or in its numerous decisions since? Other

---

[7] The Wisconsin long-arm statute is an integral part of any specific personal jurisdiction analysis. From the start, Signet has challenged the district court's exercise of specific personal jurisdiction over it for claims that do not arise out of or relate to its minimum contacts in Wisconsin. As such, for Luna Vanegas to argue that Signet "forfeited" invocation of the long-arm statute and that the long-arm statute is "irrelevant" defies reason. Appellee's Br. at 29–31.

13

portions of the Rule explicitly reference the Fifth Amendment, so clearly the Supreme Court knew what it was doing.

In reality, Luna Vanegas and his amici are trying to challenge the constraint in Rule 4(k)(1)(A) altogether. In other words, they are hoping to use the courts to accomplish what they have failed to do for decades via the rules committee: enact nationwide service under Rule 4(k).[8]

Of course, Luna Vanegas's position would lead to odd results. To start, if he is correct, it is as if the summons confers *general* jurisdiction on a defendant, no matter what new claims or parties are added. The court had (specific) personal jurisdiction over you once, so anything else is fair game! That result is wholly inconsistent with the principles of specific jurisdiction. *See, e.g.*, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Daimler*, 571 U.S. at 125; *Walden*, 571 U.S. at 283. As the Supreme Court reiterated in *Bristol-Myers*, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Luna Vanegas's position also strays from the history of service of process. *Canaday* traced that history, explaining first, "[a]t English common law, a writ of *capias ad respondendum* directed the sheriff to take the defendant into custody to

---

[8]    As Chief Judge Barron explained in his *Waters* dissent, "[i]t would be strange for these commentators to have called for such an amendment if they in fact share the majority's view that the rule's deleterious effects on the beneficial aggregation of claims plainly can be overcome at present by a means as simple as the post-summons amendment of the complaint that was operative at the time that the summons was served." 23 F.4th at 102 (Barron, C.J., dissenting).

secure his appearance before the court." *Canaday*, 9 F.4th at 395 (citing *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)). And then "[s]ervice of process took the old writ's place in the mid-eighteenth century, making a summons rather than an arrest the tool lawyers used to commence a civil lawsuit." *Id.* (citing *Int'l Shoe Co.*, 326 U.S. at 316). "Over time, service of process became a prerequisite for obtaining authority over a defendant, making it appropriate to say that service of process conferred jurisdiction." *Id.* (internal quotes omitted).

So here, Luna Vanegas's service of process on Signet conferred jurisdiction. What type of jurisdiction? Looking to the Wisconsin long-arm statute and the Fourteenth Amendment, as the Court must, the jurisdiction conferred was no doubt specific jurisdiction over a single claim. And specific jurisdiction does not permit adjudication of claims unrelated to the controversy that established jurisdiction—even if added via Rule 5. *See Bristol-Myers*, 582 U.S. at 262. But accepting Luna-Vanegas's Rule 4(k) argument would defeat the limits of specific jurisdiction and would permit adjudication of boundless claims, whether related to the controversy that established jurisdiction or not.

### B. *Mussat v. IQVIA* addressed only Rule 23 class actions—not FLSA collective actions.

Luna Vanegas next argues that *Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020), compels affirmance because this Court held that *Bristol-Myers* does not apply to "representative actions like this one." Appellee's Br. at 11. This is too clever.

### 1. Luna Vanegas conceals the differences between class actions and his proposed FLSA collective action.

To begin, *Mussat* addressed Rule 23 class actions—not FLSA collective actions—a point Luna Vanegas fails to mention until late in his brief. Nor did *Mussat* purport to apply to FLSA collective actions or any other type of aggregate litigation. In fact, it distinguished the two: "Class actions, in short, are different from many other types of aggregate litigation, and that difference matters in numerous ways for the unnamed members of the class." *Mussat*, 953 F.3d at 446–47.

Moreover, a FLSA collective action is *not* a "representative action." There is a lead plaintiff, and this Court has sometimes referred to them as "representatives,"[9] but the lead plaintiff does not literally bring claims on behalf of others absent from the suit, like in Rule 23 class actions. Indeed, the key difference between Rule 23 class actions and FLSA collective actions is this: in a class action, class members need not consent to be joined in the action (they must opt out if they so desire); in a collective action, any putative plaintiff must consent (or opt in) to be joined in the action. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]").

### 2. Other circuits have already rejected Luna Vanegas's attempts to treat all aggregate litigation alike.

*Canaday* is instructive. There, the Sixth Circuit explained how, even though it had recently reached the same holding as *Mussat* with respect to Rule 23 class

---

[9]   *See, e.g.*, *Smith v. Pro. Transp., Inc.*, 5 F.4th 700, 701 (7th Cir. 2021) (mentioning that an FLSA plaintiff attempted to serve as a "named representative").

actions, *see Lyngaas v. Curaden Ag*, 992 F.3d 412, 433 (6th Cir. 2021), the differences between Rule 23 class actions and FLSA collective actions "require different approaches to personal jurisdiction." *Canaday*, 9 F.4th at 402. Despite some similarities—like beginning with only one or a few plaintiffs, proceeding through a certification process, and streamlining aggregate litigation—Rule 23 class actions and FLSA collective actions developed against different backdrops, with different protections.

Several differences bear repeating here and illustrate why FLSA employees are *not* "functionally equivalent to Rule 23 class members."[10]  Appellee's Br. at 37.

First, again, unlike Rule 23 class actions, an FLSA collective action is not a representative action. Before 1947, the FLSA "gave employees and their 'representatives' the right to bring actions to recover amounts due under the FLSA. No written consent requirement of joinder was specified by the statute." *Canaday*, 9 F.4th at 402 (quoting *Hoffmann-La Roche*, 493 U.S. at 173). But, "[i]n response to excessive representative litigation, Congress added the opt-in provision to the FLSA in 1947." *Id.* The amendment's purpose was to "limit[] private FLSA plaintiffs to employees who asserted claims in their own right" and to "free[] employers of the

---

[10]   Luna Vanegas quotes from two cases—*Espenscheid v. DirectSat USA, LLC (Espenscheid I)*, 688 F.3d 872 (7th Cir. 2012), and *Espenscheid v. DirectSat USA, LLC (Espenscheid II)*, 705 F.3d 770 (7th Cir. 2013)—to support his view that Rule 23 class actions and FLSA collective actions are "functionally equivalent." But the *Espenscheid* cases involved class certification procedures, not jurisdiction. And, in fact, they recognized the key distinction at issue here: "in a collective action, unnamed plaintiffs need to opt in to be bound, rather than, as in a class action, opt out to be bound." *Espenscheid I*, 688 F.3d at 877.

burden of representative actions." *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 173).[11]

Second, all plaintiffs in an FLSA collective action must choose to "become parties" by opting into the collective action. *Id.* (quoting *Genesis Healthcare*, 569 U.S. at 75); *accord Bigger*, 947 F.3d at 1047 n.1. After they opt in, these plaintiffs become "party plaintiff[s]." *Id.* (quoting 29 U.S.C. § 216(b)). And they enjoy "the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Id.* at 402–03 (quoting *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003)). This is in stark contrast to Rule 23 class members, which "are not full parties to the case for many purposes"; "the absentees are more like nonparties." *Mussat*, 953 F.3d at 447–48.

Finally, class actions have procedural protections that collective actions do not. Among other things, "Rule 23 requires plaintiffs to establish numerosity, commonality, typicality, and adequacy of representation." *Canaday*, 9 F.4th at 403 (citing FED. R. CIV. P. 23(a)). But "[p]laintiffs in an FLSA collective action need only show that their employment makes them similarly situated to one another." *Id.* (citing 29 U.S.C. § 216(b)). In addition, statutes of limitations operate differently (with the clock stopping for all class members once the named party's claim is filed but rolling for FLSA opt-in plaintiffs individually), and so does choice of counsel (Rule

---

[11]  The case Luna Vanegas quotes from calling collective actions "genuine representative action[s]," *Woods v. New York Life Insurance Co.*, 686 F.2d 578, 581 (7th Cir. 1982), predated Supreme Court opinions to the contrary. *Genesis Healthcare*, 569 U.S. at 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]"); *Hoffman-La Roche*, 493 U.S. at 173 (1989) (explaining that collective actions are not true representative actions).

23 classes must be represented by class counsel but FLSA opt-in plaintiffs can choose their own counsel). *Id.*

Ultimately, these differences convinced the Sixth Circuit in *Canaday* (and the Third Circuit in *Fisher*) that "the representative nature of class actions may create an exception to the general rules of personal jurisdiction recognized in *Bristol-Myers* for 'mass actions'" but that exception does not apply to FLSA collective actions. *Id.* The same should be true in this Court.

## III. Supplemental personal jurisdiction does not save the claims of prospective out-of-state opt-in plaintiffs.

Luna Vanegas also contends that supplemental or pendent personal jurisdiction offers an alternative way to establish jurisdiction over any out-of-state opt-in claims and Signet. To begin, this contention undermines his primary argument that, once a summons is served, the personal jurisdictional inquiry is complete. Even beyond that, however, the Court has never expanded supplemental personal jurisdiction consistent with Luna Vanegas's contention.

Luna Vanegas hides what would be a seismic statutory expansion in a seemingly nonchalant statement, saying: 28 U.S.C. § 1367 "is usually invoked to supply supplemental *subject matter* jurisdiction, but its logic applies readily to *personal* jurisdiction as well." Appellee's Br. at 45. Luna Vanegas goes too far.

"Supplemental jurisdiction is a doctrine of subject matter jurisdiction." 13 D Charles A. Wright, Arthur R. Miller & Richard D. Freer, *Federal Practice and Procedure* § 3567 (3d ed. 2019). True, some courts have recognized a doctrine of "pendent personal jurisdiction," but that doctrine "is wholly unrelated to § 1367." *Id.*

"Pendent personal jurisdiction permits a court to entertain a claim against a defendant over whom it lacks personal jurisdiction, but only if that claim arises from a common nucleus of operative fact with a claim in the same suit for which the court does have personal jurisdiction over the defendant." *Id.* In that way, pendent personal jurisdiction's requirements do mirror section 1367's requirements that additional claims must "form part of the same case or controversy," 28 U.S.C. § 1367(a), which only happens if the claims share "a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). But section 1367 does not *itself* provide for pendent personal jurisdiction. And here there is no question that the claims of out-of-state opt-in plaintiffs do not share "a common nucleus of operative fact." *See id.*

Luna Vanegas cites *Robinson Engineering Co. Pension Plan & Trust v. George*, 223 F.3d 445 (7th Cir. 2000), and *Rice v. Nova Biomedical Corp.*, 38 F.3d 909 (7th Cir. 1994), as support. But neither case has any bearing on the issue before the court: whether supplemental personal jurisdiction is warranted over the separate claims of out-of-state plaintiffs—particularly absent nationwide service of process.

Importantly, both cases involve pendent *claim* jurisdiction—not pendent *party* jurisdiction—a distinction that Luna Vanegas ignores. In *Robinson Engineering*, the Court used supplemental jurisdiction to maintain personal jurisdiction over a defendant for both securities claims and later-added RICO claims because they arose out of the same nucleus of operative facts. *See Robinson Eng'g*, 223 F.3d at 449. *Rice*

also addressed pendent claim jurisdiction, and the defendant did not even "question the district court's extension" of the doctrine to his case. *Rice*, 38 F.3d at 913.

Plus, in *Robinson Engineering*, the Court was careful to note that the federal statutes at play authorize nationwide service of process. *Robinson Eng'g*, 223 F.3d at 449 ("All of the federal statutes at issue here authorize nationwide service of process.").[12] So too in *Rice*. 38 F.3d at 913 (stating that the doctrine of pendent personal jurisdiction "has heretofore been applied only to cases in which personal jurisdiction of one claim was based on a federal statute authorizing nationwide service of process").

In *Canaday*, the Sixth Circuit recognized that the exercise of pendent jurisdiction over a defendant as to related claims usually occurs "because the underlying federal statute, in contrast to the FSLA, authorized nationwide service of process and the plaintiff filed claims related to the federal anchor claim." *Canaday*, 9 F.4th at 401 (collecting cases). The Sixth Circuit also clarified that "no federal statute or rule authorizes pendent claim or pendent party personal jurisdiction." *Id.* at 401–02 (citing 4A Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1069.7 (4th ed. 2021)). And it explained that pendent party personal jurisdiction "is hard to reconcile with *Bristol-Myers*." *Id.* at 401. After all, "[i]f pendent party personal jurisdiction exists, *Bristol-Myers* should have come out

---

[12] *See also Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 WL 374145, at *8 (N.D. Ill. Feb. 1, 2016) (distinguishing *Robinson Engineering*: "Here, the FAC does not assert a single claim in which there is nationwide personal jurisdiction, nor is it clear from the allegations that the claims of the out-of-state plaintiffs, as presently pled, arise out of a common nucleus of operative fact.").

the other way." *Id.* Commentators have likewise suggested—and some district courts have held—that *Bristol-Myers* bars pendent *party* personal jurisdiction altogether.[13]

In sum, Luna Vanegas urges the Court to reject the Sixth Circuit's reasoning, again focusing on the idea that *Bristol-Myers* addressed due process limits on state courts. *See* Appellee's Br. at 46. This urging relies on a misunderstanding that is an undercurrent throughout this case. Although *Bristol-Myers* addressed due process limits on state courts, those limits inform the due process limits on federal courts when they exercise personal jurisdiction under Rule 4(k)(1)(A).

## IV. The "parade of horribles" arguments fall short.

Luna Vanegas and the amici curiae unabashedly aim to convince the Court that applying well-settled principles of personal jurisdiction to this case will undermine FLSA collective actions everywhere. Not so.

First, the FLSA says nothing about where plaintiffs may assert their claims. *See* 29 U.S.C. 216(b). It contains no service of process provision. It contains no venue provision. The most the FLSA says is that collective actions may be heard by either a federal or state court "of competent jurisdiction." *Id.*

Second, had Congress intended collective actions to be brought in any state in which an employer has operations, it could have added a nationwide service of process

---

[13] *See, e.g.*, Scott Dodson, *Personal Jurisdiction and Aggregation*, 113 NW. U.L. REV. 1, 29 (2018) ("In particular, *Bristol-Myers Squibb*'s emphasis on a connection between the claim and the forum calls into doubt the continued viability of pendent personal jurisdiction."); Capozzi, *supra* note 6, at 273–82; *Carter v. Ford Motor Co.*, No. 19-62646-CIV, 2021 WL 1165248, at *15 (S.D. Fla. Mar. 26, 2021) ("*Bristol-Myers* thus squarely forecloses the Plaintiffs' pendent-*party* personal-jurisdiction arguments here.").

provision to the FLSA.[14] It did so in other statutes, even before the FLSA's enactment. *See* 15 U.S.C. § 5 (Sherman Act discretionary nationwide service provision, enacted in 1890). And it did so in other statutes post-enactment too. *See* 9 U.S.C. § 9 (Arbitration Act nationwide service provision, enacted in 1940). Congress made no change to the FLSA, though, and the silence suggests, if anything, that Congress intended to retain the territorial limitations on district court authority imposed by the precursor to Rule 4(k)(1)(A).

Third, again, rather than sue Signet in Texas, where Signet would be subject to general jurisdiction, Luna Vanegas strategically elected to haul Signet into federal court in Wisconsin. There was nothing stopping Luna Vanegas (or his counsel, who hail from all corners of the country) from filing his claim in Texas and attempting to join a nationwide collective action without the need for employing any specific jurisdiction analysis. The amici complain of the risks of "bringing a collective action in the State of Texas"—such as not getting certified in Texas—but that is likely just a comment on the merits of their claim, not a reason to bend the rules of personal jurisdiction. *See* NELA/WELA Amici Curiae Br. at 15.

Fourth, the NELA/WELA also opine that the FLSA has a "comprehensive remedial enforcement scheme with broad access to federal district courts." NELA/WELA Amici Curiae Br. at 3. But, as highlighted above, unfettered access to

---

[14] *See Canaday*, 9 F.4th at 399 ("Because 'Congress knows how to authorize nationwide service of process when it wants to provide for it,' the absence of express language in the statute 'argues forcefully that such authorization was not its intention.'" (quoting *Omni Cap.*, 484 U.S. at 106)).

federal district courts is *not* what the FLSA provides. As a result, courts must look to other rules and procedures to fill in the gaps. These rules and procedures, clarified most recently by *Bristol-Myers*, mean that FLSA actions premised on specific personal jurisdiction of the defendant cannot bring in claims of out-of-state plaintiffs that do not arise from the same common nucleus of operative facts.

Finally, the NELA/WELA suggest that this result will magnify inequality between employees and employers and chill suits aimed at vindicating employee rights. *See* NELA/WELA Amici Curiae Br. at 11–18. This is an unfounded accusation, as: (1) there will always be at least one jurisdiction where an employer is subject to general personal jurisdiction; (2) even in a venue with only specific jurisdiction, an employee can bring in those who are truly "similarly situated," (i.e., in the same state, working on the same project, etc.); and (3) employees can still attempt to bring a Rule 23 class action covering other claims. Beyond that, however, the principles of specific personal jurisdiction are not ones that a court can ignore because their application may limit the number of parties and claims brought into a lawsuit. Indeed, that is precisely the point of specific jurisdiction: to ensure that the court is only adjudicating "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919).

In sum, applying the text of the FLSA, Rule 4, and *Bristol-Myers* does not lead to the "parade of horribles" decried by Luna Vanegas and the amici curiae. Rather, faithfully applying these texts both leads to the correct application of law and stops a race to the courthouse.

## CONCLUSION AND PRAYER

For these reasons and those stated in its opening brief, Appellant Signet Builders, Inc. requests that the Court vacate and reverse the district court's order granting conditional certification of Appellee's FLSA collective action. Signet further requests that the Court remand with instructions to consider any renewed request for FLSA conditional certification only if it encompasses similarly situated individuals who worked for Signet within Wisconsin or could otherwise independently satisfy specific personal jurisdiction over Signet in Wisconsin.

Respectfully submitted,

*/s/ Bradley W. Snead*

Bradley W. Snead
Raffi Melkonian
Rachel Buchhorn Willroth
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 – Facsimile
snead@wrightclosebarger.com
melkonian@wrightclosebarger.com
willroth@wrightclosebarger.com

Daniel D. Pipitone
MUNSCH HARDT KOPF & HARR, P.C.
700 Milam Street, Suite 800
Houston, Texas 77002
(713) 222-4060
dpipitone@munsch.com

**Counsel for Appellant-Defendant**
**Signet Builders, Inc.**

## CERTIFICATE OF COMPLIANCE

I certify that this Reply Brief of Appellant complies with Circuit Rule 32 because it is "proportionally spaced type is 12 points or larger in the body of the brief, and 11 points or larger in footnotes" and "contains no more than 7,000 words." Circuit Rule 32(b)-(c).

*/s/ Bradley W. Snead*

Bradley W. Snead

**CERTIFICATE OF SERVICE**

I certify that on February 9, 2024, I filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Seventh Circuit via CM/ECF,

which will cause copies to be served upon all counsel of record:

> Jennifer J. Zimmerman
> Erica Sweitzer-Beckman
> Legal Action of Wisconsin
> 744 Williamson Street
> Suite 200
> Madison, WI 53703
> jjz@legalaction.org
> elb@lealaction.org
>
> Lorraine A. Gaynor
> Iowa Legal Aid
> 1700 S. 1st Avenue
> Suite 10
> Iowa City, IA 52240
> lgaynor@iowalaw.org.
>
> Edward Tuddenham
> 42 Avenue Bosquet
> Paris, Il le de France 75007
> edwardtuddenham@gmail.com

*/s/ Bradley W. Snead*
Bradley W. Snead

27