No. 23-2964

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

————————————

JOSE AGEO LUNA VANEGAS,
on behalf of himself and all others similarly situated,

Plaintiff-Appellee,

v.

SIGNET BUILDERS, INC.,

Defendant-Appellant.

————————————

On Appeal from the United States District Court
for the Western District of Wisconsin

————————————

**PLAINTIFF-APPELLEE'S PETITION FOR REHEARING AND/OR
REHEARING EN BANC**

————————————

Erica Sweitzer-Beckman
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200
Madison, WI 53703
(608) 256-3304
elb@legalaction.org

Edward J. Tuddenham
228 W. 137th St.
New York, New York 10030
(617)261-2171
edwardtuddenham@gmail.com

*Attorneys for Plaintiff-Appellee*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2964

Short Caption: Luna Vanegas v. Signet Builders Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Jose Ageo Luna Vanegas, Jose Luis Garcia Gonzalez

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Legal Action of Wisconsin, Institute for Constitutional Advocacy and Protection at Georgetown, Edward Tuddenham,

and Iowa Legal Aid.

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

n/a

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: s/Erica Sweitzer-Beckman    Date: 9/27/2024

Attorney's Printed Name: Erica L. Sweitzer-Beckman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑  **No** ☐

Address: Legal Action of Wisconsin, 744 Williamson Street, Suite 200, Madison, WI 53703

Phone Number: 608-620-2019    Fax Number: 608-256-0510

E-Mail Address: elb@legalaction.org

rev. 12/19 AK

| Save As | Clear Form |

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2964

Short Caption: Luna Vanegas v. Signet Builders Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Jose Ageo Luna Vanegas, Jose Luis Garcia Gonzalez

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Legal Action of Wisconsin, Institute for Constitutional Advocacy and Protection at Georgetown, Edward Tuddenham,

and Iowa Legal Aid.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: s/Edward J. Tuddenham    Date: 9/27/2024

Attorney's Printed Name: Edward J. Tuddenham

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Edward Tuddenham 228 W. 137th St. New York, New York 10030

Phone Number: (617)261-2171    Fax Number:

E-Mail Address: edwardtuddenham@gmail.com

rev. 12/19 AK

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES ........................................................................iii

RULE 35(B) CERTIFICATION.................................................................. 1

ARGUMENT ............................................................................................... 1

    A. PLAIN LANGUAGE OF FLSA................................................... 2

    B.  LEGISLATIVE HISTORY OF THE PORTAL-TO-PORTAL ACT .............. 4

    C. CIRCUIT CASE LAW ................................................................. 8

    D.  RULE 23 ...................................................................................... 11

    E.  PRACTICAL CONSIDERATIONS ......................................... 12

CONCLUSION........................................................................................... 14

CERTIFICATE OF COMPLIANCE.......................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. City of Chicago,*
  605 F.3d 445 (7th Cir. 2010) ......................................................... 1, 9, 10

*Bristol Myers Squibb Co v. Superior Ct,*
  82 U.S. 255 (2017) ............................................................................... 1

*City of Phila. v. Morton Salt Co.,*
  248 F. Supp. 506 (E.D. Pa. 1965) ...................................................... 7

*Devlin v. Scardelletti,*
  536 U.S. 1 (2002) ................................................................................ 6

*Espenscheid v. DirectSat USA, LLC,*
  688 F.3d 872 (7th Cir. 2012) .................................................... 1, 3, 8, 9

*Espenscheid v. DirectSat USA, LLC,*
  705 F.3d 770 (7th Cir. 2013) ............................................................. 9

*Fischer v. United States,*
  144 S. Ct. 2176 (2024) ........................................................................ 3

*Genesis Healthcare v. Symczyk,*
  569 U.S. 66 (2013) ............................................................................. 10

*Harkin v. Riverboat Servs. Inc.,*
  385 F.3d 1099 (7th Cir. 2004) ............................................................ 8

*Herrington v. Waterstone Mortg. Corp.,*
  907 F.3d 502 (7th Cir. 2018) ........................................................ 9, 11

*Hoffmann-La Roche Inc. v. Sperling,*
  493 U.S. 165 (1989) ................................................................. 3, 5, 8, 12

*Hollins v. Regency,*
  867 F.3d 830 (7th Cir. 2017) ...................................................... 1, 9, 11

*In re Jimmy John's Overtime Litig.,*
  877 F.3d 756 (7th Cir. 2017) ............................................................ 13

*Knepper v. Rite Aid Corp.,*
  675 F.3d 249 (3d Cir. 2010) .......................................................................... 5

*Loch v. Am. Fam. Mut. Ins Co.,*
  2023 WL 3180859 (W.D. Wis. May 1, 2023) ........................................... 10

*Minerva Surgical, Inc. v. Hologic, Inc.,*
  594 U.S. 559 (2021) ....................................................................................... 12

*Mt. Clemens Pottery v. Anderson,*
  149 F.2d 461 (6th Cir. 1945) *rev'd on other grounds*, 328 U.S. 680 (1946) ............. 5

*Mussat v. IQVIA, Inc.,*
  953 F.3d 441 (7th Cir. 2020) ..................................................................... 1, 7

*New Prime v. Oliviera,*
  586 U.S. 105 (2019) ....................................................................................... 12

*Newhall v. Chase Home Finance LLC,*
  2010 WL 4387517 (D.N.J. Oct. 28, 2010) .................................................... 7

*Pentland v. Dravo Corp.,*
  152 F.2d 851 (3d Cir. 1945) ............................................................................ 5

*Smith v. Bd. of Pensions of the Methodist Church, Inc.,*
  54 F. Supp. 224 (E.D. Mo. 1944) .................................................................. 7

*Taylor v. Holmes,*
  127 U.S. 489 (1888) ......................................................................................... 2

*Woods v. New York Life Ins. Co.,*
  686 F.2d 578 (7th Cir. 1982) ................................................................ 1, 4, 8

*Zelley v. Muehleck,*
  10 F.R.D. 62 (E.D. Pa. 1950) ........................................................................ 6

## Statutes

29 U.S.C. § 206(d) (Equal Pay Act) ...................................................... 1, 13

29 U.S.C. § 626(b) (Age Discrimination in Employment Act); .............. 1, 13

29 U.S.C. §216(b) ............................................................................. *passim*

**Other Authorities**

3 Moore's Federal Practice §§ 23.10[1], 23.12 (2d ed. 1963) ........................................ 6

5 James Wm. Moore et al., Moore's Federal Practice § 23 (3d ed. 1997).................... 5

93 Cong. Rec. 2182 (Mar. 18, 1947) (Statement of Sen. Donnell)............................. 4

Elizabeth K. Spahn, *Resurrecting the Spurious Class*, 71 Geo. L.J. 119 (1982) ... 6, 13

**Rules**

7th Cir. R. 40(e)........................................................................................................... 11

Fed. R. Civ. P. 23 ............................................................................................... *passim*

## RULE 35(B) CERTIFICATION

(A) The panel decision conflicts with the following decisions of this Court making rehearing en banc necessary to secure and maintain uniformity of the Court's decisions: *Hollins v. Regency,* 867 F.3d 830 (7th Cir. 2017); *Espenscheid v. DirectSat USA, LLC,* 688 F.3d 872 (7th Cir. 2012) (*Espenscheid I*); *Alvarez v. City of Chicago,* 605 F.3d 445 (7th Cir. 2010)*;* and *Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982).

(B) The proceeding involves questions of exceptional importance including (1) whether 29 U.S.C. §216(b), which applies to Age Discrimination in Employment Act, Equal Pay Act, and Fair Labor Standards Act (FLSA) cases, authorizes representative actions on behalf of others similarly situated or is merely a joinder mechanism to consolidate "individual cases brought by individual plaintiffs," Slip Op. at 10, and (2) whether *Bristol Myers Squibb Co v. Superior Ct,* 582 U.S. 255 (2017), requires that every employee  represented in a section 216(b) action must satisfy personal jurisdiction requirements.

## ARGUMENT

*Mussat v. IQVIA, Inc.,* 953 F.3d 441 (7th Cir. 2020), held that, because of the representational nature of Rule 23 class actions, the court looked only to the named plaintiff's claim to determine personal jurisdiction. The majority here refused to apply that reasoning to collective actions authorized by §216(b) because it viewed them as "agglomerations of individual claims" more like mass actions than Rule 23 class actions. Slip Op. at 6, 9.  As the dissent from the panel opinion wrote: "It is

vital to understand that the majority's rule directly conflicts with both the text of the statute and its underlying principles. With respect, I would suggest that if we must disregard the text, history, and purpose of the statute to arrive at a particular outcome, then perhaps the outcome is incorrect." *Id.* at 34 (Rovner, J., dissenting).

Rehearing is appropriate because the majority decision was not only incorrect, it departs from decades of settled law and abrogates several Circuit precedents. In doing so, it throws Circuit litigation around the FLSA, the Age Discrimination in Employment Act, and the Equal Pay Act into chaos, wiping out the standards that have guided these cases for generations, and unleashing a new wave of litigation headaches on courts, employees, and employers.

### A. Plain language of the FLSA

As originally enacted, and as it exists today, section 216(b) provides that an action to recover unpaid minimum wages or overtime may be "maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). "*Maintain[ing]*" an action—as opposed to merely filing one —"*for and in behalf of*" others "similarly situated" is the essence of representational litigation.[1]

---

[1] Long before the FLSA, named litigants who litigated the interests of absent parties did so "for and in behalf of" those parties. *E.g., Taylor v. Holmes*, 127 U.S. 489, 490 (1888) (stockholders brought action on behalf of themselves "as well as for and in behalf of all other stockholders of the said company who may desire hereafter to unite with them"). Both the original and current versions of Rule 23 provide that one or more class members may sue "on behalf of all."

The majority concedes that this language created a representative action before 1947 when the Portal-to-Portal Act added the sentence: "No employee shall be a party plaintiff . . . unless he gives his consent in writing to become such a party." Slip Op. at 8. According to the majority, the addition of that sentence ended the representational nature of section 216(b) and turned it into a "system of permissive joinder," *id.* at 8-9, whereby those who filed consents became "true parties" on an equal footing with the named plaintiffs making the action nothing more than "an agglomeration of individual claims." *Id* at 9.  However, section 216(b)'s representational language authorizing an employee to maintain suit "for and in behalf of" others similarly situated remained part of the FLSA after the Portal-to-Portal Act, *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989), meaning the majority's interpretation violates the most basic rule of statutory construction by rendering that representational provision meaningless. *See Fischer v. United States*, 144 S. Ct. 2176, 2187 (2024) (noting courts' "obligation to give meaning where possible to each word and provision in the Code"). A class member cannot be a full party to an action on par with the named plaintiff while simultaneously having an action maintained on his behalf by the named plaintiff. The majority did not acknowledge this contradiction, nor did it acknowledge that the Seventh Circuit has repeatedly "rejected" viewing section 216(b) as "another name for permissive intervention." *Espenscheid I,* 688 F.3d at 877 ("For, if that were all there is to collective actions, there would have been no point in Congress's authorizing them in FLSA cases, as it did, expressly, in 29 U.S.C. §216(b)."); *Woods,*

3

686 F.2d at 580 ("[Defendant] argues that all section 16(b) creates is a right of permissive joinder. . . . But a comparison of the language of Rule 20 . . . with that of section 16(b) (an action may be brought by 'any one or more employees for and in behalf of himself or themselves and other employees similarly situated') indicates that section 16(b), unlike Rule 20, authorizes a representative action. . .").

Thus, the plain language of section 216(b) provides for a representative action brought in behalf of those who have affirmatively consented to such representation. As confirmed by the legislative history, the consent requirement was added, not to make class members full parties, but to ensure they agreed to being represented and being bound by the judgment obtained by the representative.

### B.  Legislative History of the Portal-to-Portal Act

Although the Portal-to-Portal Act eliminated collective actions brought by uninjured agents, the chairman of the Portal-to-Portal Act drafting committee, Senator Donnell, made clear that that change was not intended to affect representative actions maintained by *employees* for and in behalf of other employees. Senator Donnell explained that "[w]e see no objection" to worker-led collective actions: when "an employee, a man who is working for the X steel company, [] sue[s] for himself and other employees." 93 Cong. Rec. 2182 (Mar. 18, 1947) (Statement of Sen. Donnell).  Senator Donnell continued to explain that a purpose of the consent to sue requirement was to ensure that collective actions were "brought with the actual consent or agency of the individuals *for whom* an ostensible plaintiff filed the suit." *Id.* (emphasis added). Nothing in Senator

4

Donnell's comments suggested an intent to end representative actions brought by workers or turn section 216(b) into a mere permissive joinder device. *See Hoffmann-La Roche,* 493 U.S. at 173 (relying on this legislative history).

The history of collective action litigation confirms the consent to sue requirement did not change the representative nature of section 216(b) actions or make workers in whose behalf an action was maintained full parties. From the beginning, section 216(b) collective actions were viewed as spurious class actions. *See Pentland v. Dravo Corp.,* 152 F.2d 851, 853-856 (3d Cir. 1945) (collecting cases). Spurious class actions were part of the original version of Rule 23 promulgated by the Supreme Court in December 1937. 5 James Wm. Moore et al., Moore's Federal Practice § 23 (3d ed. 1997). Class members who wished to benefit from such an action had to agree to be bound by the court's judgment either by authorizing the representative plaintiff to act on their behalf and/or by filing a consent with the court. *See Knepper v. Rite Aid Corp.,* 675 F.3d 249, 255 & fn 9 (3d Cir. 2010). Thus, long before the Portal-to-Portal Act, section 216(b) collective action members were generally required to consent to be bound to the judgment like other spurious class members. *See, e.g.,Mt. Clemens Pottery v. Anderson,* 149 F.2d 461 (6th Cir. 1945) *rev'd on other grounds*, 328 U.S. 680 (1946) ("Approximately 300 employees or ex-employees of appellant were permitted, by order of the district court, to sign and file designations authorizing the plaintiffs to represent them."). Rather than changing the class nature of section 216(b), the consent to sue requirement actions, "largely

5

codified the existing rules governing spurious class actions." *Knepper,* 675 F.3d at 256.

Congress's use of the term "party plaintiff" is consistent with that view of the consent requirement. "The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Devlin v. Scardelletti,* 536 U.S. 1, 10 (2002).  Even "[n]onnamed class members [in Rule 23 class actions] are parties to the proceeding in the sense of being bound by the [court's judgment]." *Id.* The consent requirement makes collective members party plaintiffs in that same sense.

Despite the need for class members to affirmatively consent to be bound by the class judgment (and, in that limited sense, intervene in the action), the advantage of a spurious class action, as opposed to joinder, was that the individuals on whose behalf the action was brought were not full parties.  Thus, they could consent on an ancillary basis without being required to show an independent basis of Federal jurisdiction. 3 Moore's Federal Practice §§ 23.10[1], 23.12 (2d ed. 1963); *Zelley v. Muehleck,* 10 F.R.D. 62, 63 (E.D. Pa. 1950) ("The ability of other persons similarly situated to intervene without regard to jurisdictional limitations applicable to original parties is the raison d'etre of the spurious class action."); Elizabeth K. Spahn, Resurrecting the Spurious Class, 71 Geo. L.J. 119, 139 (1982) (discussing differences between section 216(b) spurious class actions and permissive joinder). For that reason, in spurious class actions, diversity jurisdiction was established by the citizenship of the representative party only, not by the passive class members, *see,*

*e.g., Smith v. Bd. of Pensions of the Methodist Church, Inc.,* 54 F. Supp. 224, 226 n. 1 (E.D. Mo. 1944). Similarly, "intervenors in a spurious class suit . . . need not independently satisfy venue requirements,but may stand in the shoes of the party who brought the action on their behalf." *City of Phila. v. Morton Salt Co.,* 248 F. Supp. 506, 509 (E.D. Pa. 1965); *Newhall v. Chase Home Finance LLC,* 2010 WL 4387517 at *3 (D.N.J. Oct. 28, 2010) ("[O]nly allegations from the *named plaintiffs* in a putative collective action under the FLSA … are relevant in assessing venue." (emphasis in original)). Thus, contrary to the majority's view, both before and after passage of the Portal-to-Portal Act, section 216(b) collective actions were representative actions brought by named plaintiffs "for and in behalf" of individuals who consented to be bound by the judgment but who, for jurisdictional purposes, stood in the shoes of the named plaintiffs—exactly like the Rule 23 class members discussed in *Mussat.* 953 F.3d at 447 ("[A]bsent class members are not considered parties for assessing whether the requirement of diverse citizenship under 28 U.S.C. §1332 has been met… Nor are absent class members considered when a court decides whether it is the proper venue. We see no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so.") (citations omitted).

The principal innovation of the 1966 amendments to Rule 23 was to change the mechanism for binding class members to a class judgment from an opt-in to an opt-out mechanism. That change did not affect section 216(b) collective actions because

the statutory consent to sue provision in section 216(b) could not be amended through a procedural rule. For that reason, the changes in new Rule 23 had no effect on section 216(b) actions; such actions continued to be representational actions in which similarly situated individuals consented to be bound by the judgment without having to satisfy jurisdictional requirements. *See, e.g. Hoffmann-La Roche v. Sperling,* 493 U.S. 169 (referring to section 216(b) consent plaintiffs as "potential members of the class on whose behalf the collective action has been brought.").

### C. Circuit Case law

Contrary to the majority opinion and consistent with the above history, the Seventh Circuit has for decades recognized the representative nature of section 216(b) collective actions. *Woods,* 686 F.2d at 580 (rejecting claim that section 216(b) is a mere permissive joinder mechanism and holding that "section [2]16(b), unlike Rule 20, authorizes a representative action."); *Espenscheid I,* 688 F.3d at 877 (collective actions, once certified, "proceed with the plaintiffs as representatives of the opt-ins."); *Harkin v. Riverboat Servs. Inc.,* 385 F.3d 1099, 1101 (7th Cir. 2004) (emphasizing the significance of written consent to ensure that the opting-in employee demonstrate they "wanted to have their rights adjudicated in this proceeding or be represented by counsel chosen by other plaintiffs").

This Court has repeatedly recognized that section 216(b) collective action members are not full parties on a par with the representative plaintiff. Like Rule 23 class members, collective action members' presence in the suit is entirely dependent upon the named plaintiff earning the right to represent them by

certifying a collective and avoiding decertification. "[W]hen a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs," *Alvarez,* 605 F.3d at 450, and upon decertification the claims of the opt-in employees "go poof," just like the claims of Rule 23 class members upon decertification of a class. *Espenscheid I,* 688 F.3d at 877; *see also, e.g.*, *Hollins,* 867 F.3d 830, 833 (holding that where court never certified a section 216(b) action, opt-in claimants were not parties to the case despite filing a consent to sue with the court).

Because this Court has recognized that "[t]here is no relevant difference between the collective, consisting of opt-ins, and the class, consisting of class members minus the opt-outs." *Espenschied I,* 688 F.3d at 877., it has held that section 216(b) collective actions should generally be evaluated using Rule 23 standards. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013) (*Espenscheid II*); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018) ("[Rule 23 and section 216(b) actions] are closely related.  For this reason, we have applied legal standards developed for class actions to collective actions.") (citations omitted). Contrary to the majority opinion, Slip Op. at 8, those standards include requiring the named plaintiffs to demonstrate they are adequate representatives.[2] *See, e.g., Loch v. Am. Fam. Mut. Ins Co.,* 2023 WL 3180859 at *2 (W.D. Wis. May 1, 2023) (denying collective certification because

---

[2] The original Rule 23, which governed section 216(b) actions, explicitly required named plaintiffs to be "adequate representative[s]." Rule 23(a) (1938).

representative was inadequate). Even in this action, Signet argued Plaintiff Luna Vanegas was not an adequate representative of the collective. App'x A-28, A-79 to A-80. Those standards also require section 216(b) plaintiffs to show predominance and superiority since those concepts are subsumed in the requirement that class members be "similarly situated." *Alvarez,* 605 F.3d at 449 ("If common questions predominate, plaintiffs may be similarly situated . . .").

The majority thought it had free reign to abrogate the above Circuit precedent based on "the Supreme Court's comment that 'significant differences' separate class from collective actions." Slip Op. at 10 (citing *Genesis Healthcare v. Symczyk,* 569 U.S. 66, 70 n.1 (2013)). But that case cannot justify disregarding the above-cited Circuit precedent since, as the majority concedes, the Supreme Court did not "'express an opinion' on the use of Rule 23 standards to guide conditional certification decisions." Slip Op. at 11. Moreover, nothing in *Genesis Healthcare,* which was about mootness, is relevant to the representative nature, *vel non,* of section 216(b) actions. The Court held that an FLSA plaintiff whose claim was mooted before she moved to certify a collective action lacked "a sufficient personal stake" to allow her to represent similarly situated employees, *Genesis Healthcare,* 569 U.S. at 74—exactly what would have happened in a Rule 23 action without a certification motion. The only differences that the Court noted between the two kinds of actions are those that flow from the different ways Rule 23 and 216(b) bind class members to a court's judgment. Those differences do not change the fact that opt-in plaintiffs are represented by the named plaintiffs and are not full parties to

the litigation. That has been made clear by the fact that the Circuit continues to cite the above cases even after *Genesis. See Herrington*, 907 F.3d at 507; *see also Hollins*, 867 F.3d at 834.

A single panel should not be permitted to discard decades of precedent so readily. *Cf.* 7th Cir. R. 40(e) (requiring panel to circulate proposed decision "which would overrule a prior decision of this court or create a conflict between or among circuits" to the entire court). In doing so and announcing for the first time that collective actions are "agglomerations of individual claims," the majority opinion leaves district courts in the Seventh Circuit without guideposts on how to manage these actions going forward. That is a compelling reason for granting rehearing.

### D.  Rule 23

In addition to relying on its misreading of the Portal-to-Portal Act, the majority sought to bolster its conclusion that section 216(b) actions are "agglomerations of individual claims," by stressing the differences between "the key features of Rule 23 class actions that protect absentee plaintiffs" and the alleged absence of such protections in section 216(b) actions. Slip Op. at 5, 10. That was error. The lack of formal procedural rules governing section 216(b) actions, as compared to Rule 23, simply reflects the fact, at the time section 216(b) was enacted, Congress entrusted the courts to develop the necessary procedures to protect absent class members and ensure the efficient administration of the statute. *See, e.g., Minerva Surgical, Inc. v. Hologic, Inc.*, 594 U.S. 559, 572 (2021) ("Congress legislates against a background of common-law adjudicatory principles, and it

11

expects those principles to apply except when a statutory purpose to the contrary is evident." (cleaned up; internal citations omitted)).  As the above cited Seventh Circuit case law amply demonstrates, this Circuit has done precisely that, establishing rules that protect absentee plaintiffs in section 216(b) actions at least as well as Rule 23. More fundamentally, interpreting a 1938 statute, as amended in 1947, by comparing it to a 1966 Rule of Procedure is a fundamentally flawed method of analysis. *See New Prime v. Oliviera,* 586 U.S. 105, 113 (2019) (interpreting "contracts of employment" in the Federal Arbitration Act based on common understanding of that phrase in 1925, not current usage).

### E.  Practical Considerations

"[F]or almost 80 years no court questioned whether opt-in plaintiffs needed to individually establish personal jurisdiction over the defendant." Slip Op. at 25 (Rovner, J., dissenting). All agreed a primary goal of the FLSA was to provide for the "efficient resolution in one proceeding" of FLSA disputes, benefiting employees, employers, and the judiciary alike. *Hoffmann-La Roche Inc.*, 493 U.S. at 170. And for generations, that is how FLSA collective actions proceeded. *E.g.*, *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 758 (7th Cir. 2017). Now, the majority says that most claims similar to plaintiff's must be litigated elsewhere. As the dissent correctly observes, "Signet may be subject to identical suits, challenging the same practice, alleging the same injury, in multiple courts. This is, of course, the very type of increased litigation that the FLSA sought to minimize by allowing collective actions." Slip Op. at 35 (Rovner, J., dissenting). The majority turned a mechanism

12

designed for efficiency into prism fracturing litigation around the country.[3] *See* Slip Op. at 35 (Rovner, J., dissenting) ("Signet has asked, and, today, received, our permission to create inefficiency not just for itself, but for other smaller, less successful corporations and district court judges."). The negative impact of this falls hardest on employees, allowing systematic employment practices to be treated as isolated incidents that must be remedied individually by those often least able to do so.

Equally longstanding (again, until now) is the settled notion that FLSA collective actions are representative. By declaring as obsolete decades of Circuit precedent, the majority leaves litigants and district courts dealing with collective actions without the guideposts on which they have relied for years.

The collateral damage here is not limited to the FLSA, but extends to other federal statutes providing the collective action remedy. 29 U.S.C. § 626(b) (Age Discrimination in Employment Act); 29 U.S.C. § 206(d) (Equal Pay Act). The majority's abrupt upending of the law affects thousands of cases brought under these statutes. *See Spahn,* 71 Geo. L.J. at 150-157 (discussing effect of class

---

[3] The majority argues that the blame for the consequences of its decision splintering cases across the country rests in "plaintiff's hands." Slip Op. at 20, but that ignores reality. Plaintiff here worked in Wisconsin, not Texas. He logically sought to assert his statutory right to sue on behalf of himself and others in Wisconsin. The majority opinion makes it more than possible that he can continue to assert his statutory right to sue on behalf of himself and others only in Texas, the forum most convenient for his former employer. Forcing a migrant worker who was illegally underpaid for his work to litigate in a distant forum is not consistent with the FLSA or basic principles of justice. *See* Slip Op. at 21 (Rovner, J., dissenting).

treatment versus joinder in ADEA and Equal Pay Act cases). These high stakes warrant rehearing.

## CONCLUSION

The majority opinion misinterprets the plain language, legislative history, and jurisprudence surrounding section 216(b) actions. In the process, it throws out decades of Circuit precedent, making litigation more expensive and less efficient. The Court should grant rehearing, or rehearing en banc, of this case.

Respectfully submitted,

s/ Erica Sweitzer-Beckman
Erica Sweitzer-Beckman
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200
Madison, WI 53703
(608) 256-3304
elb@legalaction.org

Edward J. Tuddenham
228 W. 137th St.
New York, New York 10030
(617)261-2171
edwardtuddenham@gmail.com

*Attorneys for Plaintiff-Appellee*

September 27, 2024

14

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a), including the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and Seventh Circuit Rule 32(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 3,852 words.

This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using 12-point Century Schoolbook Font.

*s/ Erica Sweitzer-Beckman*